WILLIAM McGRANE (057761)
CHRISTOPHER D. SULLIVAN (148083)
TREPEL MCGRANE GREENFIELD LLP
150 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 283-1776
Email: wmcgrane@tmcglaw.com
csullivan@tmcglaw.com

Special Litigation Counsel for Heller Ehrman LLP, by
and through Michael Burkart, Plan Administrator

GREGORY C. NUTI (151754)
KEVIN W. COLEMAN (168538)
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104
Telephone: (415) 364-6700
Email: gnuti@schnader.com
kcoleman@schnader.com

Co-Special Litigation Counsel for Heller Ehrman LLP, by
and through Michael Burkart, Plan Administrator

JEFFREY T. MAKOFF (120004)
ELLEN RUTH FENICHEL (172142)
VALLE MAKOFF LLP
388 Market Street, Suite 1580
San Francisco, California 94111
Telephone: (415) 986-8001
Email: jmakoff@vallemakoff.com
efenichel@vallemakoff.com

Co-Special Litigation Counsel for Heller Ehrman LLP, by
and through Michael Burkart, Plan Administrator

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>HELLER EHRMAN LLP,<br><br>Liquidating Debtor. | Case No. 08-32514 DM<br>Chapter 11<br><br>Adv. Proc. No. |
| HELLER EHRMAN LLP, LIQUIDATING DEBTOR<br><br>Plaintiff,<br><br>v.<br><br>ARNOLD & PORTER, LLP,<br><br>Defendant. | **COMPLAINT FOR AVOIDANCE OF FRAUDULENT TRANSFERS**<br>[11 U.S.C. §§ 544, 548, 550; CAL. CIVIL CODE §§ 3439.04, 3439.05, 3439.07] |

Comes now Liquidating Debtor Heller Ehrman LLP, by and through Michael Burkart, in his capacity as the duly appointed plan administrator under the Plan of Liquidation confirmed in the case, and alleges as follows:

**THE PARTIES**

1. Liquidating Debtor Heller Ehrman, LLP ("Debtor" or "Plaintiff") is a limited liability partnership which commenced its Chapter 11 case on December 28, 2008.

2. On August 9, 2010, Debtor and the Official Committee of Unsecured Creditors filed in this Court the Joint Plan of Liquidation of Heller Ehrman LLP ("Plan"). On August 16, 2010, this Court entered its order confirming the Plan, which order became effective on September 1, 2010.

3. Michael Burkart ("Burkart") is the duly appointed administrator under the Plan ("Plan Administrator").

4. Defendant Arnold & Porter ("AP") is a limited liability partnership.

**JURISDICTION AND VENUE**

5. The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334.

6. This action is commenced pursuant to 11 United States Code sections 541 through 550 and in accordance with the Federal Rules of Bankruptcy Procedures, Rules 3007 and 7001.

7. This is a core proceeding under 28 U.S.C. §157(b)(2), such that the Bankruptcy Court has jurisdiction to hear and to determine this proceeding and to enter an appropriate order and judgment.

8. Venue in the Bankruptcy Court is proper pursuant to 28 U.S.C. §1409, as

the Debtor's bankruptcy case is pending in this judicial district.

## BACKGROUND

9. Prior to its dissolution, Debtor had been a prominent international law firm with approximately 700 lawyers and many office locations, including California, New York, Washington, the United Kingdom and the Far East.

10. Plaintiff is informed and believes, and thereon alleges, that Debtor was organized as a limited liability partnership under the California Revised Uniform Partnership Act (RUPA [Cal. Corp. Code § 16100 *et seq.*]) pursuant to the terms of a certain Partnership Agreement dated as of January 1, 1994, as amended ("Partnership Agreement").

11. Pursuant to ¶2.2 of the Partnership Agreement, the purpose of the Debtor was to engage in the practice of law.

12. Five professional corporations originally served as the Debtor's partners: Heller Ehrman (California), a professional corporation; Heller Ehrman (Washington) P.S.; Heller Ehrman White & McAuliffe (Oregon) P.C.; Heller Ehrman (Alaska) P.C; and William R. Mackey, a California Professional Corporation. Via subsequent amendments to the Partnership Agreement, certain additional professional corporations were admitted as partners to the partnership, to wit Heller Ehrman, P.C., a District of Columbia Professional Corporation; Richard L. Cassin, P.A., a Florida professional Corporation; and Heller Ehrman (New York), a professional corporation (collectively, with the original partners, the "Heller PCs").

13. Each of the Heller PCs in turn had shareholders. These shareholders were required, pursuant to the terms of certain Shareholders Agreements, to be eligible and

admitted to practice law in one or more jurisdictions where Debtor practiced law ("PC Shareholders").

## CHARGING ALLEGATIONS

14. At a meeting of all PC Shareholders conducted on September 26, 2008, PC Shareholders holding more than 2/3 of the required number of votes elected to dissolve the Debtor. In connection therewith, the PC Shareholders also voted to approve a specific, written dissolution plan ("Dissolution Plan").

15. Prior to adopting the Dissolution Plan, both the Heller PCs and the PC Shareholders had always previously agreed with Debtor that, *inter alia*, neither of them had any interest in any profits or benefits derived or arising from the completion of any unfinished business of the Debtor ("Unfinished Business") that might happen to exist as of the time that any scheme of dissolution affecting Debtor were to be adopted by PC Shareholders. (See, e.g., ¶3.5(a) of the Partnership Agreement.)

16. Prior to and following the adoption of the Dissolution Plan, both the Heller PCs and the PC Shareholders were subject to Section 16404 of RUPA, which provides that a partner has a duty "[t]o account to [Debtor] and hold as trustee for [Debtor] any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity." Cal. Corp. Code § 16404(b)(1) (2010).

17. Prior to and following the adoption of the Dissolution Plan, both the Heller PCs and the PC Shareholders were subject to Section 16401 of RUPA, which provides that partners are "not entitled to remuneration for services performed for the partnership, except for reasonable compensation for services rendered in winding up the business of the partnership." Cal. Corp. Code § 16401(h) (2007).

4
Complaint For Avoidance of Fraudulent Transfer

Case: 10-03203    Doc# 1    Filed: 11/30/10    Entered: 11/30/10 18:06:49    Page 4 of 13

18. Article VI.F of the Dissolution Plan, however, provided that—to the complete exclusion of both Debtor and Heller PCs—all of Debtor's property rights in Unfinished Business were to be initially transferred to, *inter alia*, any entities engaged in the practice of law which might chose to allow PC Shareholders to move their law practices to such entities ("Jewel Waiver").

19. The Jewel Waiver stated:

> As the firm is no longer in a position to continue to service its clients efficiently and as an inducement to encourage Shareholders to move their clients to other law firms and to move Associates and Staff with them, the effect of which will be to reduce expenses to the Firm-in-Dissolution, and to assure that client matters are attended to in the most efficient and effective manner possible, and to help ensure collection of existing accounts receivable and unbilled time with respect to such clients, the Firm-in-Dissolution will waive any rights and claims under the doctrine of *Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984) to seek payment of legal fees generated after the departure date of any lawyer or group of lawyers with respect to non-contingency/non-success fee matters only and the Dissolution Committee is authorized to provide appropriate assurances to law firms that Shareholders may choose to join regarding this issue …

20. The Jewel Waiver was not contingent upon receipt of any payment or other consideration.

21. No payment or other consideration was ever given Debtor by anyone in exchange for the Jewel Waiver.

## FIRST CLAIM FOR RELIEF

**(To Avoid and Recover Intentional Fraudulent Transfers –**

**11 U.S.C. §§ 548(a)(1)(A) and 550)**

22. Plaintiff incorporates paragraphs 1-21 as if fully set forth herein.

23. The Jewel Waiver constituted one or more transfers of an interest in property of the Debtor. Prior to the adoption of the Dissolution Plan, Debtor had an exclusive

property interest in all profits and/or benefits derived or arising from the completion of any Unfinished Business existing at the time of the adoption of the Dissolution Plan.

24. Defendant was the entity for whose benefit the transfers were made and/or the immediate or mediate transferee of the initial transferees of such transfers.

25. AP allowed a certain PC Shareholder, to wit Carl Nadler, Charles Curtis, David Shapland, James Speyer, John Ulin and Kenneth Chernof, to move their law practices to AP ("AP Heller Hires").

26. By its own express terms, and following AP's making Heller Hires, the Jewel Waiver initially transferred certain Unfinished Business, including, but not limited to, those "non-contingency/non-success" matters listed in Attachment A to the Complaint, to AP ("AP Captured Unfinished Business"), which initial transfer of AP Captured Unfinished Business occurred within two years prior to the Petition Date of December 28, 2008.[1]

27. The Jewel Waiver was not granted in exchange for anything of value from AP because no provision of the Dissolution Plan conditioned anyone's right to enjoy the benefits of the Jewel Waiver in exchange for the payment of any consideration of any kind to the Debtor.

28. Debtor received no value or less than a reasonably equivalent value in exchange for the Jewel Waiver.

29. Debtor entered into the Jewel Waiver with actual intent to hinder, delay, or defraud one or more entities to which Debtor was indebted or became indebted on or after the date of such transfers.

---

[1] The Unfinished Business matters listed in Attachment A are identified using the matter numbers used by the Debtor prior to the transfer of these matters to Defendant. The Jewel Waiver, by its own terms, applied only to "non-contingency/non-success" matters. By listing a matter number in Attachment A, Burkart is not conceding that the matter falls within this definition, or that the Jewel Waiver applies to it.

30. Plaintiff is informed and believes and based thereon alleges that, to the extent the Debtor did receive consideration of any kind from AP, or anyone else, in exchange for the Jewel Waiver, the value of such consideration did not have a value that was reasonably equivalent to the value of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP.

31. At the time of the Jewel Waiver, the Debtor was insolvent or became insolvent as a result of the loss of the value of the AP Captured Unfinished Business initially transferred by virtue of Jewel Waiver to AP.

32. At the time of the Jewel Waiver, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which the property remaining with Debtor following its loss of the value of the AP Captured Unfinished Business initially transferred by virtue of Jewel Waiver to AP, was an unreasonably small capital.

33. At the time of the loss of the value of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP, the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

34. Plaintiff may avoid the initial transfer of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP under Section 548(a)(1)(A) and recover the value of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP pursuant to Section 550.

//
//
//

## SECOND CLAIM FOR RELIEF

**(To Avoid and Recover Constructive Fraudulent Transfers –**

**11 U.S.C. §§ 548(a)(1)(B) and 550)**

35. Plaintiff incorporates paragraphs 1-34 as if fully set forth herein.

36. The Jewel Waiver constituted one or more transfers of an interest in property of the Debtor.

37. Defendant was the entity for whose benefit the transfers were made and/or the immediate or mediate transferee of the initial transferees of such transfers.

38. By its own express terms, and following AP's making Heller Hires, the Jewel Waiver initially transferred AP Captured Unfinished Business, which initial transfer of AP Captured Unfinished Business occurred within two years prior to the Petition Date of December 28, 2008.

39. The Jewel Waiver was not granted in exchange for anything of value from AP because no provision of the Dissolution Plan conditioned anyone's right to enjoy the benefits of the Jewel Waiver in exchange for the payment of any consideration of any kind to the Debtor.

40. Debtor received no value or less than a reasonably equivalent value in exchange for the Jewel Waiver.

41. At the time of the Jewel Waiver, the Debtor was insolvent or became insolvent as a result of the loss of the value of the AP Captured Unfinished Business initially transferred by virtue of Jewel Waiver to AP.

42. At the time of the loss of the value of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP, the Debtor intended to incur, or

believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

43. Plaintiff may avoid the initial transfer of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP under Section 548(a)(1)(B) and recover the value of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP pursuant to Section 550.

### THIRD CLAIM FOR RELIEF

**(To Avoid and Recover Actual and Constructive Fraudulent Transfers – Cal. Civ. Code §§ 3439.04 and 3439.07 and 11 U.S.C. §§ 544, 550)**

44. Plaintiff incorporates paragraphs 1-43 as if fully set forth herein.

45. Plaintiff is informed and believes, and thereon alleges, that there is a creditor that holds an unsecured claim that is allowable under Section 502 of the Bankruptcy Code.

46. The Jewel Waiver constituted one or more transfers of an interest in property of the Debtor. Prior to the adoption of the Dissolution Plan, Debtor had an exclusive property interest in all profits and/or benefits derived or arising from the completion of any Unfinished Business existing at the time of the adoption of the Dissolution Plan.

47. Defendant was the entity for whose benefit the transfers were made and/or the immediate or mediate transferee of the initial transferees of such transfers.

48. By its own express terms, and following AP's making Heller Hires, the Jewel Waiver initially transferred AP Captured Unfinished Business, which initial transfer of AP Captured Unfinished Business occurred within four years prior to the Petition Date of December 28, 2008.

49. The Jewel Waiver was not granted in exchange for anything of value from AP because no provision of the Dissolution Plan conditioned anyone's right to enjoy the
9
Complaint For Avoidance of Fraudulent Transfer

benefits of the Jewel Waiver in exchange for the payment of any consideration of any kind to the Debtor.

50. Debtor received no value or less than a reasonably equivalent value in exchange for the Jewel Waiver.

51. Debtor entered into the Jewel Waiver with actual intent to hinder, delay, or defraud one or more creditors of Debtor.

52. Plaintiff is informed and believes and based thereon alleges that, to the extent the Debtor did receive consideration of any kind from AP, or anyone else, in exchange for the Jewel Waiver, the value of such consideration did not have a value that was reasonably equivalent to the value of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP.

53. At the time of the Jewel Waiver, the Debtor was insolvent or became insolvent as a result of the loss of the value of the AP Captured Unfinished Business initially transferred by virtue of Jewel Waiver to AP.

54. At the time of the Jewel Waiver, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which the property remaining with Debtor following its loss of the value of the AP Captured Unfinished Business initially transferred by virtue of Jewel Waiver to AP, was an unreasonably small capital.

55. At the time of the loss of the value of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP, the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

10
Complaint For Avoidance of Fraudulent Transfer

Case: 10-03203    Doc# 1    Filed: 11/30/10    Entered: 11/30/10 18:06:49    Page 10 of 13

56. Plaintiff may avoid the initial transfer of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP under California Civil Code Sections 3439.04, 3439.07, and Bankruptcy Code Section 544 and recover the value of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP pursuant to Section 550.

## FOURTH CLAIM FOR RELIEF

**(To Avoid and Recover Constructive Fraudulent Transfers –**

**Cal. Civ. Code § 3439.05 and 3439.07 and 11 U.S.C. §§ 544, 550)**

57. Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

58. Plaintiff is informed and believes, and thereon alleges, that there is a creditor that holds an unsecured claim arising on or before the Petition Date that is allowable under Section 502 of the Bankruptcy Code.

59. The Jewel Waiver constituted one or more transfers of an interest in property of the Debtor. Prior to the adoption of the Dissolution Plan, Debtor had an exclusive property interest in all profits and/or benefits derived or arising from the completion of any Unfinished Business existing at the time of the adoption of the Dissolution Plan.

60. Defendant was the entity for whose benefit the transfers were made and/or the immediate or mediate transferee of the initial transferees of such transfers.

61. By its own express terms, and following AP's making Heller Hires, the Jewel Waiver initially transferred AP Captured Unfinished Business, which initial transfer of AP Captured Unfinished Business occurred within four years prior to the Petition Date of December 28, 2008.

62. The Jewel Waiver was not granted in exchange for anything of value from AP because no provision of the Dissolution Plan conditioned anyone's right to enjoy the

benefits of the Jewel Waiver in exchange for the payment of any consideration of any kind to the Debtor.

63. Debtor received no value or less than a reasonably equivalent value in exchange for the Jewel Waiver.

64. Plaintiff is informed and believes and based thereon alleges that, to the extent the Debtor did receive consideration of any kind from AP, or anyone else, in exchange for the Jewel Waiver, the value of such consideration did not have a value that was reasonably equivalent to the value of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP.

65. At the time of the Jewel Waiver, the Debtor was insolvent or became insolvent as a result of the loss of the value of the AP Captured Unfinished Business initially transferred by virtue of Jewel Waiver to AP.

66. Plaintiff may avoid the initial transfer of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP under California Civil Code Sections 3439.05, 3439.07, and Bankruptcy Code Section 544 and recover the value of the AP Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to AP pursuant to Section 550.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant as follows:

**PRAYER FOR RELIEF**

1. Avoid the Jewel Waiver as constituting one or more fraudulent transfers pursuant to 11 U.S.C. Sections 548 and 550, as well as California Civil Code Sections 3439.04, 3439.05, 3439.07 and 11 U.S.C. Section 544, and order the return of such transfers or the value thereof;

2. Require payment of any and all pre-judgment and post-judgment interest at the highest rate allowed by applicable law;

3. Require payment of attorneys' fees, expenses and costs; and

4. Grant such other and further relief deemed appropriate under the circumstances.

Dated: November 30, 2010     TREPEL, McGRANE GREENFIELD LLP

                By: */s/ Christopher D. Sullivan*
                    Christopher D. Sullivan

                Special Litigation Counsel for Liquidating Debtor, Heller Ehrman LLP