PAMELA PHILLIPS (No. 87581)
Email: pphillips@howardrice.com
JONATHAN W. HUGHES (No. 186829)
Email: jhughes@howardrice.com
DIANA D. DIGENNARO (No. 248471)
Email: ddigennaro@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
       FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone:   415/434-1600
Facsimile:   415/677-6262

Attorneys for Defendant
ARNOLD & PORTER LLP

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| HELLER EHRMAN LLP, | No. 08-32514 DM |
|           Liquidating Debtor. | Adv. Proc. No. 10-03203 |
| | Action Filed: November 30, 2010 |
| HELLER EHRMAN LLP, Liquidating Debtor, | DEFENDANT ARNOLD & PORTER LLP'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS ALL CLAIMS |
|           Plaintiff, | |
|    v. | |
| ARNOLD & PORTER, LLP, | Date:        March 31, 2011 |
|           Defendant. | Time:       1:30 p.m. |
| | Courtroom: 22 |
| | Judge:     Hon. Dennis Montali |
| | Trial Date:  None Set |

Case: 10-03203   Doc# 18   Filed: 02/18/11   Entered: 02/18/11 13:13:21   Page 1 of 22

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............... 1

I. INTRODUCTION. .............................................................. 1

II. STATEMENT OF FACTS. ................................................. 2

III. PLEADING STANDARDS UNDER RULE 12(b)(6). ......... 4

IV. ARGUMENT. ..................................................................... 5

    A. All Of Plaintiff's Claims Fail Because, Before Its Dissolution, Heller LLP Had No Right To Bring Claims Against The PC Shareholders Or The Heller PCs For Any Unfinished Business Profits, And Thus The Alleged "Jewel Waiver" Transferred No Property Of The Debtor. ......... 5

        1. Each Of The Fraudulent Transfer Claims Is Based On The Premise That Heller LLP Had A Right To Demand An Accounting From The Heller PCs And PC Shareholders Under Section 16404(b)(1) Of RUPA. ......... 6

        2. Heller LLP Never Had A Right To Pursue A Claim Under RUPA Against the PC Shareholders For Unfinished Business Profits Because The PC Shareholders Were Not Partners Of Heller LLP. ......... 8

        3. Heller LLP Had No Right To Pursue A Claim Under RUPA Against The Heller PCs For Unfinished Business Profits Because The Complaint And Record Demonstrate That The Heller PCs Had No Rights To Such Profits And Have Not Derived Any Such Profits. ......... 11

    B. The Intentional Fraudulent Transfer Claims Fail For The Additional Reason That The Complaint Does Not Allege Sufficient Facts To Establish The Essential Element Of Actual Fraudulent Intent. ......... 14

V. CONCLUSION. ................................................................... 18

Case: 10-03203    Doc# 18    Filed: 02/18/11    Entered: 02/18/11 13:13:21    Page 2 of 22

HowardRice

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Clow* (*In re Stac Elecs. Sec. Litig.*), 89 F.3d 1399 (9th Cir. 1996) — 3

*Annod Corp. v. Hamilton & Samuels*, 100 Cal. App. 4th 1286 (2002) — 14

*Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937 (2009) — 4, 14, 15, 16, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) — 4, 5, 9, 14, 15, 17

*Branch v. Tunnell,* 14 F.3d 449 (9th Cir. 1994) — 3

*Brandt v. nVidia Corp. (In re 3dfx Interactive, Inc.)*, 389 B.R. 842 (Bankr. N.D. Cal. 2008) — 14

*Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008) — 14

*In re Brobeck, Phleger & Harrison LLP (Greenspan v. Orrick, Herrington & Sutcliffe LLP)*, 408 B.R. 318 (Bankr. N.D. Cal. 2009) — 1

*In re Textainer P'ship Sec. Litig.*, No. C-05-0969 MMC, 2005 WL 3801596 (N.D. Cal. Dec. 12, 2005) — 10, 11

*Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984) — 3, 4, 8, 13, 17

*Kelly v. Smith*, 611 N.E.2d 118 (Ind. 1993) — 10

*Lyon v. Lyon*, 246 Cal. App. 2d 519 (1966) — 10

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) — 5

*N. Highlands I, II, LLC v. Comerica Bank*, 328 F. App'x 358 (9th Cir. 2009) — 17,

*Official Comm. of Unsecured Creditors v. Ashdale (In re Labrum & Doak, LLP)*, 227 B.R. 391 (Bankr. E.D. Pa. 1998) — 13, 17

*Parrino v. FHP, Inc.,* 146 F.3d 699 (9th Cir. 1998) — 3

*United States ex rel. Chunie v. Ringrose*, 788 F.2d 638 (9th Cir. 1986) — 2, 4, 9

## Statutes

11 U.S.C.
   §548(a)(1) — 5
   §548(a)(1)(A) — 14

Case: 10-03203    Doc# 18    Filed: 02/18/11    Entered: 02/18/11 13:13:21    Page 3 of 22

# TABLE OF AUTHORITIES

**Page(s)**

Fed. R. Civ. P.
    8      15
    9      17
    12(b)(6)      3, 4

Cal. Civ. Code
    §3439.04      5
    §3439.04(b)      14
    §3439.04(b)(8)      16
    §3439.04(b)(9)      16
    §3439.05      5

Cal. Corp. Code
    §100, *et seq.*      7
    §13400, *et seq.*      7
    §13401(b)      7
    §13403      7
    §16100, *et seq.*      2, 7
    §16100      7
    §16103(a)      7
    §16103(b)      7
    §16103(b)(1)      7
    §16202(b)      7
    §16404(b)(1)      6, 7, 8, 9, 10, 11
    §16405(a)      9, 13
    §15001, *et seq.* (repealed)      7

## Other Authorities

II Alan R. Bromberg & Larry E. Ribstein, *Bromberg & Ribstein On Partnership* §6.07(a)(8), at 6:129 (2010)      10

Case: 10-03203    Doc# 18    Filed: 02/18/11    Entered: 02/18/11 13:13:21    Page 4 of 22

*Howard Rice*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION.

The plaintiff in this adversary proceeding copied almost verbatim the *Jewel*-based fraudulent transfer claims that the Brobeck, Phleger & Harrison LLP trustee filed in its bankruptcy as if plaintiff Heller Ehrman LLP ("Heller LLP") and Brobeck were the same.[1] But, Heller LLP and Brobeck were structured differently in a critical respect that is fatal to plaintiff's claims in this case.   The lawyers working for Brobeck were partners of the Brobeck partnership and therefore subject to partnership duties.  By contrast, the Arnold & Porter LLP lawyers named in the Complaint were not partners of Heller LLP; rather, some were shareholders of entirely different entities that were professional corporations and others were not even that.

Heller's organizational structure was established years before its dissolution and alleged insolvency in 2008, and precludes the application of the Unfinished Business Rule that plaintiff relies on for all of its claims.  Heller LLP was a limited liability partnership.  It had eight partners, all of which were professional corporations ("Heller PCs").  This structure is pivotal in assessing plaintiff's claims.  While the Heller PCs owed certain partnership duties to Heller LLP, the shareholders did not.  Yet all four of plaintiff's claims are based on the erroneous assumption that the shareholders owed partnership duties to Heller LLP.  Because that assumption is wrong as a matter of law, all four of plaintiff's claims fail and the Court should dismiss the Complaint in its entirety, without leave to amend.  Likewise, plaintiff's vague allegations about the Heller PCs cannot salvage their fraudulent transfer claims.

In addition, the First and Third Claims asserting "intentional" and "actual" fraud must

---

[1] *See In re Brobeck, Phleger & Harrison LLP (Greenspan v. Orrick, Herrington & Sutcliffe LLP)*, 408 B.R. 318 (Bankr. N.D. Cal. 2009) ("Brobeck").   Arnold & Porter LLP does not agree with certain portions of the *Brobeck* decision and does not concede that those portions were correctly decided.  However, one thing about the decision in *Brobeck* is clear: the Court's ruling was based on the undisputed fact that the former partners of Brobeck were exactly that—*partners*—and as such, subject to the duty to account imposed by RUPA absent an agreement to the contrary.  *See id.* at 336.

Case: 10-03203     Doc# 18     Filed: 02/18/11     Entered: 02/18/11 13:13:21     Page 5 of 22

be dismissed for the independent reason that the Complaint fails to plead fraud with sufficient specificity. The Complaint alleges virtually no facts to support those claims and rests nearly exclusively on legal conclusions. This type of bare-bones pleading cannot survive under the standards recently articulated by the Supreme Court. For the reasons explained below, these claims must be dismissed with prejudice.

## II. STATEMENT OF FACTS.[2]

Liquidating Debtor Heller LLP is a limited liability partnership. Complaint ¶1. Prior to its dissolution, Heller LLP was organized as a limited liability partnership under California's Revised Uniform Partnership Act ("RUPA"), Cal. Corp. Code §§16100, *et seq.*, pursuant to the terms of a Partnership Agreement dated January 1, 1994, as subsequently amended ("Partnership Agreement"). *Id.* ¶10.

Heller LLP had eight partners, all of which were professional corporations: Heller Ehrman (California), A Professional Corporation; Heller Ehrman (Washington) P.S.; Heller Ehrman White & McAuliffe (Oregon) P.C.; Heller Ehrman (Alaska) P.C.; William R. Mackey, A California Professional Corporation; Heller Ehrman, P.C., District of Columbia Professional Corporation; Richard L. Cassin, P.A., A Florida Professional Corporation; and Heller Ehrman (New York), A Professional Corporation. *Id.* ¶12. The Heller PCs were Heller LLP's only partners. *Id.* Neither Arnold & Porter LLP nor any of the individuals named in paragraph 25 of the Complaint were partners of Heller LLP. *See id.* ¶¶12, 13, 25.

The Complaint alleges that each of the Heller PCs had shareholders ("PC Shareholders"). *Id.* ¶13. The PC Shareholders' rights and obligations as shareholders were governed by a shareholders agreement dated September 28, 2005 ("Shareholder Agreement"), and their rights and obligations as employees were governed by an employment agreement dated September 28, 2005 ("Employment Agreement"). Complaint

---

[2]Defendant contests the accuracy of many of the Complaint's factual allegations, but for purposes of this motion, accepts those allegations as true, as required by the Federal Rules of Civil Procedure. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Case: 10-03203    Doc# 18    Filed: 02/18/11    Entered: 02/18/11 13:13:21    Page 6 of 22

¶13; Declaration Of Jonathan W. Hughes In Support Of Request For Judicial Notice ("Hughes Decl.") Ex. C (Employment Agreement) at 1; and Ex. B (Shareholder Agreement) ¶5.1 (incorporating by reference the Employment Agreement). These two agreements were between a particular Heller PC and its PC Shareholders. Heller LLP was not a party to either of these two agreements. Likewise, the PC Shareholders were not parties to Heller LLP's Partnership Agreement with its eight partners (the Heller PCs). Importantly, the PC Shareholders did not hold any interest in the partnership, and in fact, expressly disclaimed any interest, rights or powers in the partnership. *See id.*, Ex. A (Partnership Agreement) ¶8.5; Ex. B (Shareholder Agreement) ¶5.4; Ex. C (Employment Agreement) ¶¶4.2(b), 10.4.[3]

On September 26, 2008, the Heller PCs elected to dissolve Heller LLP and approved a specific written dissolution plan ("Dissolution Plan"). Complaint ¶14.[4] The Complaint in this action is based upon and challenges a particular portion of the Dissolution Plan that plaintiff refers to as a "Jewel Waiver":

> [T]he Firm-in Dissolution [Heller Ehrman LLP] will waive any rights and claims under the doctrine of *Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984) to seek

---

[3]On a Rule 12(b)(6) motion, the Court may consider documents whose contents are alleged in the Complaint, even if they are not physically attached to the pleading, as long as no party questions their authenticity. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). The Court may also consider documents that are not expressly referred to in a complaint if the plaintiff's complaint necessarily relies on them and the authenticity of the documents is not contested. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

Based on these rules, this Court may consider the Shareholder Agreement, the Partnership Agreement, and the September 26, 2008 Dissolution Plan, because they are referenced in the Complaint and their authenticity is not questioned (*see, e.g.*, Complaint ¶¶10, 11, 13-15, 18-19). *Anderson v. Clow* (*In re Stac Elecs. Sec. Litig.*), 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). The Court may also consider the Employment Agreement and the Partnership Agreement, because they are already part of the record in this bankruptcy proceeding and their authenticity is undisputed. In fact, the Official Committee of Unsecured Creditors has relied on them in a motion it filed in the main bankruptcy case. *See* Docket Nos. 1219-1, 1219-3 (Declaration Of Henry I. Bornstein In Support Of Motion For An Order Approving Settlements With Former Heller Shareholders And Determining That Such Settlements Will Constitute "Good Faith" Settlements Under California Code Of Civil Procedure Section 877, Exhibits A, C).

[4]Under the Partnership Agreement, which plaintiff relies on, only the Heller PCs—the partners—could authorize the dissolution of Heller LLP. Partnership Agreement ¶8.6 (vote of at least 66-2/3% of the partners required to terminate, amend or modify the Partnership Agreement). To the extent the Complaint alleges that the PC Shareholders themselves voted *directly* to dissolve Heller LLP, that is obviously a mistake.

Case: 10-03203     Doc# 18     Filed: 02/18/11     Entered: 02/18/11 13:13:21     Page 7 of 22

payment of legal fees generated after the departure date of any lawyer or group of lawyers . . . . (Complaint ¶19 (quoting Dissolution Plan ¶VI.F))[5]

Heller LLP has now sued Arnold & Porter LLP, claiming that the so-called "Jewel Waiver" constitutes an intentional and/or constructive fraudulent transfer of the debtor's property under California and federal law. *Id.* ¶¶18, 20-66. Plaintiff contends that the property interest the debtor transferred was the debtor's alleged right to demand an accounting under partnership law, specifically RUPA. *Id.* ¶¶16-19, 23, 36, 46, 59.

## III. PLEADING STANDARDS UNDER RULE 12(b)(6).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the court to dismiss a complaint that fails to state a claim upon which relief may be granted. On a motion to dismiss, the court "need not assume the truth of legal conclusions [that are] cast in the form of factual allegations." *Chunie*, 788 F.2d at 643 n.2. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1950 (2009).

A complaint has to plead facts sufficient to support its claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. *Twombly* clarified that even alleging specific facts is not enough if the facts alleged are "merely consistent with" a defendant's liability. *Twombly*, 550 U.S. at 557. Rather, the claim alleged must be "plausible." *Id.* at 556. "[F]or a complaint to survive a motion to

---

[5]The phrase "Jewel Waiver" is a misnomer. Under RUPA, the duty to account for profits derived from the winding up of a partnership exists only if, at the time of dissolution, the partners of the partnership have not agreed otherwise. The partners of Heller LLP (the Heller PCs) had agreed otherwise, so no such duty to account ever arose. *See Jewel*, 156 Cal. App. 3d at 176 ("*absent a contrary agreement*, any income generated through the winding up of unfinished business is allocated to the former partners according to their respective interests in the partnership") (emphasis added). However, this motion *does not rely on the existence of the so-called "Jewel Waiver"* in Heller LLP's Dissolution Plan. For the reasons discussed in this motion, *even if the Dissolution Plan had not contained the so-called Jewel Waiver* Heller LLP still would not have had any right to profits that the PC Shareholders may have derived after Heller LLP dissolved.

Case: 10-03203    Doc# 18    Filed: 02/18/11    Entered: 02/18/11 13:13:21    Page 8 of 22

dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). And finally, the claim cannot be speculative. The "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555.

Here, all of plaintiff's claims allege a fraudulent transfer. To state a claim for intentional or constructive fraudulent transfer, plaintiff must allege facts sufficient to demonstrate the following elements: (1) a transfer of a property interest belonging to the debtor; (2) the debtor's actual intent to hinder, delay or defraud creditors *or* receipt of less than reasonably equivalent value in exchange for the transfer; and (3) the debtor was insolvent at the time of the transfer. 11 U.S.C. §548(a)(1). The same is true under California law. *See* Cal. Civ. Code §§3439.04, 3439.05. Plaintiff does not meet any of the pleading requirements described above: the Complaint lacks specific facts to support its claims; the few facts alleged are, at best, speculative, and they do not meet *Twombly's* standard of "plausibility."

## IV. ARGUMENT.

### A. All Of Plaintiff's Claims Fail Because, Before Its Dissolution, Heller LLP Had No Right To Bring Claims Against The PC Shareholders Or The Heller PCs For Any Unfinished Business Profits, And Thus The Alleged "Jewel Waiver" Transferred No Property Of The Debtor.

There are two principle reasons that Heller LLP's structure makes a difference in this case: the structure was adopted more than 15 years ago; and based on that structure, Heller LLP had no right to seek an accounting against the PC Shareholders or the Heller PCs before it dissolved in 2008. Given these indisputable facts, the purported "Jewel Waiver" obviously did not give away any right that Heller LLP possessed before the Dissolution Plan was adopted.

The plaintiff's theory is that the alleged "Jewel Waiver" caused Heller LLP to give up certain "property." The "property" that plaintiff appears to allege was fraudulently transferred was Heller LLP's purported right to demand an accounting from the

shareholders—or the Heller PCs—under RUPA for profits "derived by [Heller LLP's] partner[s]" on unfinished matters pending at the time of Heller LLP's dissolution. Complaint ¶¶16-19, 23, 36, 46, 59. Plaintiff alleges that the "Jewel Waiver" transferred this right. *Id.* ¶¶23, 36, 46, 59. In fact, however, plaintiff never had such a right to demand an accounting:

- Heller LLP could not pursue such claims against the PC Shareholders because the PC Shareholders were not partners of Heller LLP and did not owe a duty to account to Heller LLP under RUPA.

- Heller LLP had no claim against the Heller PCs for such profits either. The Complaint does not even attempt to allege that the Heller PCs had any right to any post-dissolution profits from the unfinished matters, nor does it allege that the Heller PCs actually derived any such profits. There is a good reason for this omission: plaintiff could not truthfully make such allegations, and without them, its claims fail as a matter of law.

In short, the so-called "Jewel Waiver" is much ado about nothing. It did not, and could not, transfer any property belonging to Heller LLP to anyone. Had Heller's dissolution not come upon it so precipitously, someone eventually would have figured out that it was an unnecessary pair of belt and suspenders.

       **1.**    **Each Of The Fraudulent Transfer Claims Is Based On The Premise That Heller LLP Had A Right To Demand An Accounting From The Heller PCs And PC Shareholders Under Section 16404(b)(1) Of RUPA.**

Because all of plaintiff's claims are premised on the purported transfer of Heller LLP's alleged right to demand an accounting under Section 16404(b)(1) of RUPA (Complaint ¶¶15-19) we start with an overview of RUPA and the right to demand an accounting that can exist under Section 16404(b)(1).[6]

_____

[6]Arnold & Porter does not agree that the duty to account set forth in Section 16404(b)(1) creates a property interest capable of being transferred.

Case: 10-03203   Doc# 18   Filed: 02/18/11   Entered: 02/18/11 13:13:21   Page 10 of 22

HowardRice

The official title of RUPA is the Uniform Partnership Act of 1994. Cal. Corp. Code §16100. It is frequently referred to as the Revised Uniform Partnership Act, or RUPA, because the Act revised the previously existing Uniform Partnership Act ("UPA") that had been the law governing partnerships in California for decades. *Id.* §§15001, *et seq.* (repealed effective Jan. 1, 1999). RUPA applies to partnerships, but not to other types of entities that are not formed under RUPA. *See id.* §16202(b) ("[a]n association formed under a statute other than this chapter, a predecessor statute, or a comparable statute of another jurisdiction is not a partnership under this chapter").

Professional corporations are not subject to RUPA because they are not formed under RUPA. *Id.* They are formed under the General Corporation Law, *id.* §§100, *et seq.*, or the Moscone-Knox Professional Corporation Act, *id.* §§13400, *et seq.* *See id.* §13401(b) ("'Professional corporation' means a corporation organized under the General Corporation Law or pursuant to subdivision (b) of Section 13406 that is engaged in rendering professional services"); *see also id.* §13403 ("The provisions of the General Corporation Law shall apply to professional corporations, except where such provisions are in conflict with or inconsistent with the provisions of this part"). Consequently, RUPA does not apply to professional corporations. *See id.* §16202(b).

RUPA acknowledges that generally "relations among the partners and between the partners and the partnership are governed by the partnership agreement." *Id.* §16103(a). There are two exceptions to that general rule. First, RUPA prohibits the partnership agreement from doing certain things, such as eliminating a partners' statutory rights to certain information. *Id.* §§16103(b), 16103(b)(1). Second, RUPA supplies certain default rules or gap-filling provisions that will apply in the absence of a contrary agreement among the partners. *Id.* §16103(a) ("To the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership").

One of the default rules, or gap-filling rules, of RUPA is what has come to be called the "Unfinished Business Rule." Set forth in Section 16404(b)(1), the Unfinished Business

Case: 10-03203    Doc# 18    Filed: 02/18/11    Entered: 02/18/11 13:13:21    Page 11 of 22

HowardRice

Rule provides that, in the absence of an agreement to the contrary, a partner owes a duty "[t]o account to the partnership and hold as trustee for it *any property, profit, or benefit derived by the partner* in the conduct and winding up of the partnership business." *Id.* §16404(b)(1) (emphasis added); *Jewel*, 156 Cal. App. 3d at 176 (duty to account under UPA applies "absent a contrary agreement" among the partners). *Jewel v. Boxer* was the seminal case applying the Unfinished Business Rule to a law partnership, and the rule is sometimes referred to as the doctrine of *Jewel v. Boxer.*

The Complaint alleges that, in its Dissolution Plan, Heller LLP agreed that it would "waive any rights and claims under the doctrine of *Jewel v. Boxer* . . . to seek payment of legal fees generated after the departure date of any lawyer or group of lawyers with respect to non-contingency/non-success fee matters only." Complaint ¶19. The Complaint then alleges that that provision of the Dissolution Plan constituted a fraudulent transfer. *Id.* ¶¶23, 36, 46, 59.

These are the basic concepts that form the statutory framework for plaintiff's claims. We now turn to addressing plaintiff's claim that Heller LLP had a right to demand an accounting for "profits derived by the partner" against the PC Shareholders or the Heller PCs. If Heller LLP never had such a right, then what plaintiff calls the "Jewel Waiver" did not transfer any property of the debtor to anyone. Ergo, there could not have been a fraudulent transfer as a matter of law.

### 2. Heller LLP Never Had A Right To Pursue A Claim Under RUPA Against The PC Shareholders For Unfinished Business Profits Because The PC Shareholders Were Not Partners Of Heller LLP.

As discussed above, RUPA applies to partnerships and the relationships among partners and the partnership. But the PC Shareholders were not partners of Heller LLP. *See* Complaint ¶¶12, 13; *see also* Hughes Decl. Ex. C (Employment Agreement) ¶10.4 ("Employee shall have no direct or indirect interest in the Partnership or in the Company's interest in the Partnership" and "waives any and all rights, interest or power in the Partnership"). Heller Ehrman LLP had only eight partners, the Heller PCs. Complaint ¶12. As a result, the PC Shareholders did not owe Heller LLP the duties that RUPA imposes on

Case: 10-03203    Doc# 18    Filed: 02/18/11    Entered: 02/18/11 13:13:21    Page 12 of 22

partners, including the duty to account under Section 16404(b)(1). *See* Cal. Corp. Code §16404(b)(1) (providing that a *partner* owes a duty to account to the partnership); *see also id.* §16405(a) ("[a] partnership may maintain an action against a *partner* for a breach of the partnership agreement, or for the violation of a duty to the partnership, causing harm to the partnership") (emphasis added). Plaintiff's conclusory allegation that "the PC Shareholders were subject to Section 16404 of RUPA" (Complaint ¶16) does not make it so. This allegation is nothing but a legal conclusion, one that is incorrect as a matter of law, and cannot be taken as true for purposes of this motion. *Twombly*, 550 U.S. at 555; *Chunie*, 788 F.2d at 643 n.2.

Indeed, the Complaint itself contains factual allegations that are inconsistent with plaintiff's legal conclusion. *See* Complaint ¶¶12, 13. Likewise, the agreements plaintiff refers to (or that are in the Court's record) also contradict the conclusion plaintiff advocates. There were three basic agreements that defined the rights and obligations of Heller LLP, the eight Heller PCs and the PC Shareholders vis-à-vis each other: the **Partnership Agreement** (which was between Heller LLP and the eight Heller PCs); and the **Shareholder Agreement** and the **Employment Agreement** (which were between a single Heller PC and its employees and shareholders) (collectively, "Agreements").[7] *See* Glossary dated January 1, 1994 (Hughes Decl. Ex. D) at 1-2. The Glossary is incorporated by reference in paragraph 1 of the Partnership Agreement, the Shareholder Agreement and the Employment Agreement. Each of the Agreements expressly provides that together they define the obligations that the partnership (Heller LLP), the Heller PCs, and the shareholders of the Heller PCs owed to each other. Hughes Decl. Ex. A (Partnership Agreement) ¶8.1; Ex. B (Shareholder Agreement) ¶5.1; Ex. C (Employment Agreement) ¶10.1.

The scope of these three agreements is broad. Among other things, they cover the PC Shareholders' rights and obligations upon dissolution of the firm, the terms and conditions of their departure from the firm, and the termination of their employment. *See id.* Ex. B

---

[7]The "Retirement System" also is a "Basic Document," but is not relevant here.

Case: 10-03203    Doc# 18    Filed: 02/18/11    Entered: 02/18/11 13:13:21    Page 13 of 22

(Shareholder Agreement) ¶¶3.1-3.9, 5.4; Ex. C (Employment Agreement) ¶¶9.1-9.5, 10.4. The Employment Agreement and Shareholder Agreement imposed many duties on the PC Shareholders, but all of those duties ran to the Heller PCs, not to the partnership. And in particular, while the Agreements specifically cover what duties a PC Shareholder had once he or she left the Heller PC, *including a duty on the part of some shareholders to help collect certain accounts receivables*, none of the three agreements impose any duty on any PC Shareholder to account to Heller LLP for anything, much less for profits earned on work that another law firm performed after Heller LLP had dissolved.

By law, the Agreements' enumeration of the parties' specific obligations implies the exclusion of any other obligation or duty not so mentioned. Thus, pursuant to both the express language of the contracts and the principle of *expressio unius est exclusion alterius*, the Agreements are the "final, complete and exclusive statement" of the PC Shareholders' post-dissolution obligations, if any, to Heller LLP and the Heller PCs. *Lyon v. Lyon*, 246 Cal. App. 2d 519, 523 (1966) (finding a partnership agreement's dissolution clause was sufficient to avoid the statutory duty to account under Section 16404(b)(1) because it required an inventory of "the assets, liabilities, and income" of the partnership, even though it did not specifically discuss the distribution of post-dissolution fees); *see also Kelly v. Smith*, 611 N.E.2d 118, 121 (Ind. 1993) (where the partners strike an entire economic bargain, the court will not change the terms of that comprehensive economic bargain by changing only one piece of it: "To impose the [parties'] agreement on one half of the equation and the UPA on the other half of the equation leads to an inequitable result and defeats the intent of the parties in creating the agreement").

Looking beyond the plain language of RUPA, as a general rule, the fiduciary duties that partners owe to their partnership do not apply to third parties who are not partners. *In re Textainer P'ship Sec. Litig.*, No. C-05-0969 MMC, 2005 WL 3801596, at *12 (N.D. Cal. Dec. 12, 2005); II Alan R. Bromberg & Larry E. Ribstein, *Bromberg & Ribstein On Partnership* §6.07(a)(8), at 6:129 (2010) ("fiduciary duties [generally] are owed only by the partners and not their controlling managers, shareholders, or affiliates" (footnote omitted)).

Case: 10-03203     Doc# 18     Filed: 02/18/11     Entered: 02/18/11 13:13:21     Page 14 of 22

Thus, Heller LLP does not have a right to enforce the duty to account against those who were not its partners.

Based on the *factual* allegations in the Complaint, the Heller PCs were the only entities who could have owed a duty to account *to Heller LLP*, because they were the partnership's only partners. *See* Complaint ¶12; *In re Textainer*, 2005 WL 3801596, at *12. Given these facts, the purported "Jewel Waiver," which is the centerpiece of plaintiff's case, becomes totally irrelevant. Even if the Dissolution Plan had not included what plaintiff calls a "Jewel Waiver," the PC Shareholders still would not have owed any duty to account to Heller LLP for the simple reason that they were never partners of Heller LLP. As the following section of this brief explains, the Dissolution Plan's waiver of Heller's right to seek an accounting from the Heller PCs also did not transfer any interest in unfinished business profits.

### 3. Heller LLP Had No Right To Pursue A Claim Under RUPA Against The Heller PCs For Unfinished Business Profits Because The Complaint And Record Demonstrate That The Heller PCs Had No Rights To Such Profits And Have Not Derived Any Such Profits.

The Complaint also seeks to rely on the *Heller PCs'* duties to Heller LLP as a basis for seeking to recover alleged unfinished business profits from Arnold & Porter. Plaintiff's theory is that the "Jewel Waiver" waived Heller LLP's alleged right to demand from the Heller PCs profits from "payment of legal fees generated after the departure date of any lawyer or group of lawyers . . . ." Complaint ¶19 (quoting Dissolution Plan). However, with or without the "Jewel Waiver," the Heller PCs never had any interest in such profits, and thus, with or without the "Jewel Waiver," Heller LLP could never have recovered such profits from the Heller PCs. Heller LLP's waiver of its right to demand an accounting from the Heller PCs simply had no effect on Heller LLP's alleged interest in profits from post-dissolution legal fees.

The RUPA duty to account gives the partnership the duty to demand from its partners profits the partners derive in winding up the partnership's business. Cal. Corp. Code §16404(b)(1). But, the Complaint does not allege that the Heller PCs actually derived any profit in the conduct and winding up of Heller LLP's business. Thus, even if there had been

Case: 10-03203    Doc# 18    Filed: 02/18/11    Entered: 02/18/11 13:13:21    Page 15 of 22

HowardRice

no "Jewel Waiver," Heller LLP could not have recovered any such profits from the Heller PCs. Plaintiff does not explain how the Heller PCs can account for something they never received. Given plaintiff's allegations and the reality of what happened, it would be implausible for plaintiff to now allege that the Heller PCs actually had derived any profits from post-dissolution work that other law firms did.

To skirt this problem, plaintiff appears to contend that, even if the Heller PCs did not *actually* derive any winding-up profit, they could have or should have done so, and that but for the "Jewel Waiver," Heller LLP would have had the right to demand those profits from the Heller PCs. There is no support for such a theory. Further, the theory is flatly contradicted by a fundamental and critical fact reflected in the documents referenced in the Complaint. Under the Partnership Agreement between Heller LLP and the Heller PCs, the Heller PCs did not actually have a right to such profits. The Complaint's silence on this point is profound. The Complaint does not allege that the Heller PCs had any right to any profits earned on work *before* Heller dissolved, much less that they had any right to receive such profits *after* Heller dissolved. Thus, plaintiff cannot rely on a theory that it may recover profits that the Heller PCs could have or should have generated during the winding up. The Partnership Agreement that had been in place for many years before Heller LLP's dissolution expressly gave the Heller PCs no right to such profits. This is not a matter of poor drafting that can be fixed by an amendment. This is a reflection of reality, and given this reality, whatever the so-called Jewel Waiver did vis-à-vis the Heller PCs, it did not rob Heller LLP of profits the Heller PCs never had.

As noted above, this Court can look beyond the Complaint itself to judge the plausibility of plaintiff's claims. The Complaint and the record in this case reveal the following facts. The limited liability partnership between Heller LLP and its eight partners (the Heller PCs) was structured in such a way that, even prior to dissolution, the Heller PCs did not have a right to profits from client matters. *See* Complaint ¶¶15, 23; Hughes Decl. Ex. A (Partnership Agreement) ¶¶3, 3.5, 4.5, 4.7, 8.4. For example, all client relationships were between the clients and Heller LLP, and the Heller PCs were only funded to the extent

Case: 10-03203    Doc# 18    Filed: 02/18/11    Entered: 02/18/11 13:13:21    Page 16 of
22

necessary to pay the PC Shareholders and other employees. *Id.* ¶¶3, 4.5, 4.7. The Partnership Agreement was also extremely clear that the Heller PCs did not have any interest in the partnership's accounts receivable. In fact, each Heller PC expressly relinquished and waived "the right to demand an accounting of any Partnership business." *Id.* ¶¶3.5, 8.4. In short, the documents make clear that the Heller PCs had no profits, or interest in any profits, for which to account.

RUPA provides another reason plaintiff cannot state a claim. A partnership may file an action against a partner only to the extent a breach of a fiduciary duty has "caus[ed] harm to the partnership." Cal. Corp. Code §16405(a). Since the Heller PCs derived no profits and had no right to derive any profits, Heller LLP could not as a matter of law meet its burden to demonstrate that any failure of the Heller PCs to account, or their alleged "waiver" of any duty to do so, caused the partnership any harm.[8]

In sum, the alleged "Jewel Waiver" in the Dissolution Plan accomplished nothing because even before the Dissolution Plan, Heller LLP had no right to demand an accounting against the PC Shareholders, and any rights it had against the Heller PCs did not entitle Heller LLP to demand profits from the Heller PCs because the Heller PCs were not entitled to derive any profits and derived no such profits. This result works no unfairness. There is no policy in the law favoring the application of the Unfinished Business Rule where it doesn't apply. Indeed, to the contrary, the law encourages law firms to adopt provisions that prevent application of the Unfinished Business Rule, and there are many compelling policy considerations that militate against application of the rule with respect to law firm dissolutions in any circumstance, at least with respect to hourly rate cases. *See Jewel*, 156 Cal. App. 3d at 175 ("The absence of a written partnership agreement was an invitation to litigation upon a dissolution of the partnership"); *Official Comm. of Unsecured Creditors v. Ashdale (In re Labrum & Doak, LLP)*, 227 B.R. 391, 412 (Bankr. E.D. Pa. 1998) ("First and

---

[8]Plaintiff has not alleged that Arnold & Porter owed any fiduciary duty to Heller LLP, nor could it. Plaintiff also has not alleged that the Heller PCs or the PC Shareholders breached any fiduciary duty to Heller LLP.

Case: 10-03203     Doc# 18     Filed: 02/18/11     Entered: 02/18/11 13:13:21     Page 17 of 22

Howard Rice

HowardRice

foremost, partners are free (indeed encouraged) to execute written partnership agreements which provide for an exact disposition of profits from hourly rate matters after dissolution").

In addition, Heller's organizational structure was established years before plaintiff contends Heller LLP became insolvent, and the manner in which it structured itself precludes the application of RUPA's Unfinished Business Rule in this case. Having adopted the structure it did, Heller LLP cannot now ask the Court to ignore that structure.

**B.    The Intentional Fraudulent Transfer Claims Fail For The Additional Reason That The Complaint Does Not Allege Sufficient Facts To Establish The Essential Element Of Actual Fraudulent Intent.**

The Complaint alleges that the Debtor entered into the so-called "Jewel Waiver" with "actual intent to hinder, delay or defraud" creditors. Complaint ¶¶29, 51 (the First and Third Claims for Relief).[9]  With respect to these two claims, the Complaint is just the type of pleading the Supreme Court dismissed in *Twombly* and *Iqbal*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" did not suffice there and will not suffice here. A closer look at both *Twombly* and *Iqbal* is instructive, because both were cases in which the plaintiffs characterized the defendants' conduct as unlawful when there were actually lawful and rational explanations for their conduct. In these two cases, the Court created a new "plausibility" standard that requires the dismissal of complaints that do no more than allege conduct that has a *possible* nefarious explanation when there could just as well be rational and lawful explanations for the defendants' conduct. That is exactly what plaintiff has done here.

---

[9]California's Uniform Fraudulent Transfer Act and the Bankruptcy Code's fraudulent transfer provisions are almost identical in form and substance. *Donell v. Kowell*, 533 F.3d 762, 769-70 (9th Cir. 2008). Under both statutes, plaintiff has the burden of proving the elements of a fraudulent transfer by a preponderance of the evidence. *See Annod Corp. v. Hamilton & Samuels*, 100 Cal. App. 4th 1286, 1293 (2002); *Brandt v. nVidia Corp. (In re 3dfx Interactive, Inc.)*, 389 B.R. 842, 863 (Bankr. N.D. Cal. 2008). Under Section 548(a)(1)(A) of the Bankruptcy Code, the estate may avoid a transfer made within one year of the petition filing date if the debtor "made such transfer . . . with actual intent to hinder, delay, or defraud" any entity to which the debtor was or became indebted. 11 U.S.C. §548(a)(1)(A). California's substantially similar statute sets forth eleven factors which the Court may consider in determining fraudulent intent (Cal. Civ. Code §3439.04(b)); these have sometimes been referred to as "badges of fraud." *Annod Corp.*, 100 Cal. App. 4th at 1298.

ARNOLD & PORTER'S MPA ISO MOT. TO DISMISS                    AP NO. 10-03203

-14-

In *Twombly*, the plaintiffs' complaint alleged an illegal agreement in violation of antitrust laws. The Supreme Court held that the complaint failed to state a claim under Rule 8. In doing so, the Court first noted that the plaintiffs' assertion that an agreement was unlawful was nothing more than a "legal conclusion" and, as such, was not entitled to the assumption of truth. 550 U.S. at 555, 564-65. The Court next addressed the allegation that the defendants had engaged in "parallel" behavior, where each simultaneously acted in a similar manner. This allegation was supported by factual allegations, but that alone was not enough. Rather, the Supreme Court held that the court had to determine whether such allegations and the supporting facts gave rise to a "plausible suggestion of conspiracy." *Id.* at 565-66. The Court acknowledged that parties engaging in the same or similar conduct "in parallel" can be *consistent with* an unlawful agreement, but their having done so did not necessarily or even plausibly suggest illegality, because the conduct alleged was also compatible with, and indeed more likely explained by, lawful behavior. *Id.* at 567. Because the allegations were likely explained by lawful behavior, the Court dismissed the complaint for failure to state a claim. *Id.* at 570.

The plaintiffs in *Iqbal* asserted a claim of discrimination against Muslim men. The Supreme Court held that the plaintiffs' claims failed because aside from "a 'formulaic recitation of the elements' of a constitutional discrimination claim," the complaint did not *plausibly suggest* any entitlement to relief. There were well-pleaded factual allegations—that the FBI, under the direction of the defendants, detained thousands of Muslim men—and those allegations could be "consistent with" discriminatory intent. 129 S. Ct. at 1951. But once again, the Court looked at whether there were other explanations for the defendants' conduct. "[G]iven more likely explanations, [the allegations did] not plausibly establish this purpose." *Id.* The Court concluded that "[a]s between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." *Id.* at 1951-52 (quoting *Twombly*, 550 U.S. at 567). The Court acknowledged that the allegations in *Iqbal*, if true, "could be the basis for some inference of wrongful intent on [the defendants'] part," but the Court nonetheless held

Case: 10-03203   Doc# 18   Filed: 02/18/11   Entered: 02/18/11 13:13:21   Page 19 of 22

that the plaintiff's "complaint d[id] not contain any factual allegation sufficient to plausibly suggest [the defendants'] discriminatory state of mind.  His pleadings thus d[id] not meet the standard necessary to comply with Rule 8."  *Id.* at 1952.

Under the two-prong approach set forth in *Twombly*, this Court must begin its analysis by "identifying the allegations in the complaint that are not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1949-50, 1951.  In this case, plaintiff asserts many allegations that are nothing more than legal conclusions that need not be accepted as true.  Like the "bald allegations" in *Iqbal*, the conclusory nature of these allegations robs them of any presumption of truth.  *See id.* at 1951.

- "Debtor entered into the Jewel Waiver with actual intent to hinder, delay, or defraud one or more entities to which Debtor was indebted or became indebted on or after the date of such transfers."  Complaint ¶¶29, 51.
- "Debtor received no value or less than a reasonably equivalent value in exchange for the Jewel Waiver."  *Id.* ¶¶28, 40, 50, 63.
- Debtor was insolvent at the time of the alleged transfer.  *Id.* ¶¶31-33, 41-42, 53-55, 65.

Of the eleven "badges of fraud," only two are alleged in the Complaint: receipt of less than reasonably equivalent value and insolvency.  *Id.* ¶¶28, 40, 50, 63, 31-33, 41-42, 53-55, 65; *see also* Cal. Civ. Code §3439.04(b)(8), (b)(9).  But these allegations are themselves legal conclusions and therefore are not entitled to the presumption of truth.  The Complaint alleges no facts about the value of the property interest allegedly transferred, the value the debtor received in exchange, or a comparison between the two.  The Complaint also alleges no facts about the debtor's financial situation beyond a flat restatement of the statutory definitions.

After weeding out these legal conclusions, this Court next must consider the well-pleaded factual allegations in the Complaint "to determine if they plausibly suggest an entitlement to relief," using the standard of "plausibility" the Supreme Court has adopted.  *Iqbal*, 129 S. Ct. at 1951.  Here, the only relevant *factual* allegation is the unremarkable

Case: 10-03203   Doc# 18   Filed: 02/18/11   Entered: 02/18/11 13:13:21   Page 20 of 22

statement that at a meeting on September 26, 2008, the PC Shareholders voted to approve a specific written dissolution plan. Complaint ¶15. Even if taken as true, this allegation is hardly consistent with fraudulent intent. It is sensible and wise for law firms to attempt to effect an orderly dissolution and to incentivize their lawyers to assist in that process. *See Jewel*, 156 Cal. App. 3d at 175 ("The absence of a written partnership agreement was an invitation to litigation upon a dissolution of the partnership"); *In re Labrum*, 227 B.R. at 412 ("First and foremost, partners are free (indeed encouraged) to execute written partnership agreements which provide for an exact disposition of profits from hourly rate matters after dissolution"). "[G]iven [these] more likely explanations, [the Complaint does] not plausibly establish [a] purpose [of fraudulent intent]." *Iqbal*, 129 S. Ct. at 1951.

The Supreme Court also clarified that, while Rule 9 of the Federal Rules of Civil Procedure permits "'[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally,'" in that context, "'generally' is a relative term." *Iqbal*, 129 S. Ct. at 1954. In the context of Rule 9, the term "generally" should "be compared to the particularity requirement applicable to fraud or mistake." *Id.* "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Id.* (rejecting plaintiff's argument that general allegation of discriminatory intent was sufficient under Rule 9). "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

At most, the Complaint pleads facts that could be consistent with fraudulent intent, but *Twombly* and *Iqbal* require more than just the *possibility* of wrongdoing. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557); *see also N. Highlands I, II, LLC v. Comerica Bank*, 328 F. App'x 358, 360-61 (9th Cir. 2009) (affirming dismissal with prejudice of claims for violation of the Uniform Fraudulent Transfer Act where complaint contained only

HowardRice

1  "highly generalized assertions" and "the allegations provide[d] virtually no factual

2  support").

3  **V.   CONCLUSION.**

4        For the foregoing reasons, Arnold & Porter LLP respectfully requests that the Court

5  dismiss the Complaint in its entirety with prejudice.

6

7  DATED: February 18, 2011.

8                                              Respectfully,

9                                              PAMELA PHILLIPS
                                               JONATHAN W. HUGHES
10                                             DIANA D. DIGENNARO
                                               HOWARD RICE NEMEROVSKI CANADY
11                                                 FALK & RABKIN
                                               A Professional Corporation
12

13                                             By:_____/s/Pamela Phillips_____
                                                           PAMELA PHILLIPS
14
                                               Attorneys for Defendant ARNOLD & PORTER
15                                             LLP

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 10-03203   Doc# 18   Filed: 02/18/11   Entered: 02/18/11 13:13:21   Page 22 of
22