

**Signed and Filed: April 22, 2011**

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 08-32514DM |
| HELLER EHRMAN LLP, | ) |
| | ) |
| Debtor. | ) Chapter 11 |
| _____ | ) |
| HELLER EHRMAN LLP, | ) Adversary Proceeding |
| | ) No. 10-3203DM |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ARNOLD & PORTER LLP, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

### MEMORANDUM DECISION ON MOTION TO DISMISS

I.  INTRODUCTION

Plaintiff ("Debtor") filed a complaint[1] for avoidance of fraudulent transfers, seeking to recover from Defendant law firm the value of profits received by it with respect to unfinished business that was being handled by the Debtor at the time of its dissolution.  Under documents that governed Debtor, its corporate

_____

[1] Debtor filed sixteen similar adversary proceedings against sixteen law firms.  The complaints are virtually identical as to the allegations and the theories of recovery; they differ as to each particular defendant's "unfinished business" discussed in the text, _infra_.  The adversary proceedings are: 10-3203; 10-3210; 10-3213; 10-3216; 10-3219; 10-3221; 10-3234; 10-3235; 10-3238; 10-3239; 10-3243; 10-3244; 10-3251; 10-3253; 10-3254; and 10-3263.

-1-

partners and the attorney Shareholders of the corporate partners, Debtor retained the right to all profits and fees (including "unbilled fees, work in progress . . . or clientele") derived from legal services to its clients, even upon departure of the attorney handling much matters.  However, as part of its dissolution process, Debtor agreed to waive its rights under Jewel v. Boxer, 156 Cal. App. 3d 171 (1984) ("Jewel"),[2] to recover fees associated with such unfinished business and generated by its attorneys after their departure.  Debtor seeks to avoid this waiver as constructive or actually fraudulent transfer.

In the First Claim For Relief, Debtor seeks to avoid and recover intentional fraudulent transfers under the Bankruptcy Code; in the Second Claim For Relief, Debtor seeks to avoid and recover the same transfers as constructive fraudulent transfers under the Bankruptcy Code; in the Third Claim For Relief, it seeks to avoid and recover actual fraudulent transfers under the California Uniform Fraudulent Transfer Act ("CUFTA"); in the Fourth Claim For Relief, it seeks to avoid and recover constructive fraudulent transfers under CUFTA.

Defendant filed a motion to dismiss ("Motion").  For the reasons explained below, the Motion will be granted, in part, although Debtor will be given leave to amend the Complaint as to the First Claim For Relief and the Third Claim For Relief; in all

---

[2] In Jewel, the court held that, in the absence of a partnership agreement, the Uniform Partnership Act requires that attorney fees received on cases in progress upon dissolution belong to all partners of the dissolved partnership, even when a former partner is substituted in as counsel for the dissolved firm.  Debtor had a partnership agreement, but as explained in the text, it retained certain potentially valuable rights.

-2-

other respects the Motion will be denied.[3]

II.   ISSUES

   A.   Did the doctrine of <u>Jewel</u> apply given the organizational structure adopted by Debtor no later than January 1, 1994?

   B.   Assuming <u>Jewel</u> applies, did Debtor's Basic Documents[4] operate to waive all or any of Debtor's rights to demand an accounting by, or recover unfinished business profits from, attorneys who left the firm and retained unfinished business?

   C.   Assuming <u>Jewel</u> applies and Debtor did not waive its rights under the Basic Documents, did paragraph VI(F) (the "Jewel Waiver") of Debtor's dissolution plan effective September 26, 2008 (the "Plan of Dissolution") constitute a transfer of Debtor's property that the Debtor may seek to avoid and recover, in whole or in part, by the Complaint?

   D.   Would any recovery on the Complaint by Debtor constitute an illegal sharing of fees under the California Rules of Professional Conduct or violate any other applicable law?

   E.   May Debtor recover on the Complaint against Defendant,

---

[3] All defendants in the adversary proceedings listed in footnote 1 filed motions to dismiss that were fully briefed, then argued and submitted on March 31, 2011.  While some defendants argued issues that others did not, the court deals with all issues as though they had been raised by all defendants.  The court disposes of the sixteen motions by identical Memorandum Decisions and Orders on Motion to Dismiss filed in those sixteen matters this date.

[4] For purposes of the Motion and this Memorandum Decision, the Basic Documents are the Partnership Agreement ("PA") (revised, as amended, effective January 1, 1994); Shareholders Agreement ("SHA") (revised, as amended, effective September 28, 2005); Employment Agreement ("EA")(revised, as amended, effective September 28, 2005); Glossary (as amended and restated as of June 1, 2006).

-3-

1  rather than individuals who were Members of Debtor's professional

2  corporate partners and later joined Defendant?

3      F.   Do the First Claim For Relief and the Third Claim For

4  Relief adequately allege sufficient facts to establish essential

5  elements of actual fraudulent transfers?

6  III.  DISCUSSION[5]

7      A. Jewel applies despite Debtor's organizational structure.

8      Defendant argues that Jewel cannot apply because of Debtor's

9  organizational structure.  Debtor is a California limited

10  liability partnership with a California professional corporation

11  as its managing general partner and several other professional

12  corporations (incorporated in California and other states) as its

13  remaining partners.  The individual attorneys who practiced law

14  under the business of Debtor were Members (viz., Shareholders) of

15  those professional corporations pursuant to various versions of

16  the SHA.  Those individuals also were employed by their respective

17  professional corporations pursuant to versions of the EA.

18      The parties do not disagree that Debtor was organized under

19  the California Revised Uniform Limited Partnership Act (Cal. Corp.

20  Code §§ 16100-16962)("RUPA"), and that the corporate partners of

21  Debtor were not.  Likewise, the Shareholder-employees of those

22  corporate partners are not governed by RUPA.  Defendant therefore

23  argues that the duty of partners to account to one another under

24  RUPA does not govern the relationships here, and even of it did,

25

26      [5]  All facts referred to in this Memorandum Decision are
    drawn from the Complaint or the Basic Documents, and assumed true
    for purposes of the Motion.  al-Kidd v. Ashcroft, 580 F.3d 949,
27  956 (9th Cir. 2009).  The court rejects as unpersuasive arguments
    as to any issue raised in the Motion and not specifically
28  addressed in this Memorandum Decision.

-4-

the "reasonable compensation" rule of RUPA means that Debtor had
nothing to transfer via the Jewel Waiver. Defendant also contends
that Jewel has no applicability because it dealt with individuals
who practiced law as partners in a law partnership. Even though
the court agrees that RUPA is inapplicable, it disagrees with
Defendant's contention that -- absent the Jewel waiver -- the
Shareholders had no duty to account for profits from unfinished
business.

Defendant relies on Debtor's two-tier structure in an effort
to distinguish Fox v. Abrams, 163 Cal. App. 3d 610 (1985), in
which the California Court of Appeals rejected the argument that
Jewel does not apply to parties who practice law together in a law
corporation. The Fox court pointed out that Jewel was not based
solely on partnership law, but rather on a sound public policy
preventing lawyers who practice law together for competing for the
most remunerative cases in anticipation that they might retain
those cases should the law firm dissolve. The doctrine
discourages former members of the firm from scrambling to take
physical possession of files and seeking personal gain by
soliciting existing clients.

The policy announced by the Fox court was unequivocal:

> There is no reason to hold that when lawyers decide to
> practice together in corporate form rather than partnership,
> they are relieved of fiduciary obligations toward each other
> with respect to the corporation's business.

> *   *   *

> What we do say, however, is that attorneys practicing
> together in a law corporation owe each other fiduciary duties
> very similar to those owed by law partners and therefore the
> fact that a law corporation is involved is no reason to
> disregard the fair and reasonable principles of Jewel v.
> Boxer or to interpret the parties' agreement in a manner

-5-

1   favoring one group over another.

2   <u>Fox</u>, 163 Cal. App. 3d at 617 (emphasis added).  <u>See also</u> <u>Rothman</u>

3   <u>v. Dolan</u>, 20 Cal. App. 4th 755, 757 (1993);  <u>Grossman v. Davis</u>, 28

4   Cal. App. 4th 1833, 1835 (1994).[6]

5       The cornerstone of Defendant's argument is that the

6   Shareholders had no fiduciary duty to Debtor.  This ignores the

7   principles announced in <u>Jewel</u> and extended in <u>Fox</u> to attorneys

8   practicing within a professional corporation.  This court will

9   apply those principles to a partnership consisting of corporations

10  that are owned by the attorney-employees who give them

11  professional life and meaning.

12      Defendant offers no authority suggesting that the

13  partnership-corporation-shareholder structure of Debtor immunizes

14  it from the <u>Jewel</u> analysis.  While Debtor has not cited cases

15  applying <u>Jewel</u> to any law firm structured in a two-tier setting

16  such as Debtor, the principles are the same and this court will

17  not ignore the substance of Debtor's existence in blind deference

18  to the form of it.  <u>Jewel</u> and its progeny apply these sound

19  principles to attorneys who practice law together.  The attorneys

20  who came together and created Debtor to be the institution that it

21  once was did so by the carefully drafted Basic Documents, and they

22  worked together as attorneys, representing clients, sharing the

23

24      [6] The application of the <u>Jewel</u> principle to law firms formed
    as corporations has been recognized in other jurisdictions as
25  well.  <u>Sullivan, Bodney & Hammond v. Bodney</u> 16 Kan. App. 2d 208,
    820 P.2d 1248 (1991); <u>Sullivan, Bodney & Hammond v. Houston</u>
26  <u>General Insurance Co.</u>, 2 F.3d 824 (8th Cir. 1993) ("We do not
    believe that the Supreme Court of Missouri would allow members of
27  the Missouri bar to expand their rights against litigation clients
    and adversaries simply by conducting business in the corporate
28  form").

                                    -6-

good with the bad, and quite importantly, trusting one another as fellow members of the same law firm.

The rules of RUPA (governing the partnership structure of Debtor) and the applicable governing professional corporate laws (whether those of California or another state)[7] creating Debtor's corporate partners provide the structure and means of governance of the entities and compensation of the Members. Those Members are themselves attorneys practicing an honored and respected profession, and they are governed by yet another set of rules that bind those professionals together. Those are the rules of trust, confidence and loyalty, rules that apply to attorneys representing clients together, fiduciary ones to be sure. _Jewel_, 156 Cal. App. 3d at 179. The choice of California law by the partners is not without consequences. _Jewel_ applies, regardless whether RUPA does. Under _Jewel_, attorneys practicing together need to establish their respective rights and duties by their agreements.

More importantly, Defendant's argument ignores the Basic Documents themselves. Attached to this Memorandum Decision is an appendix that sets forth the portions of the Basic Documents that support the court's conclusion that Debtor was a law firm organized through an integrated set of interrelated documents. It was a law firm of lawyers who chose the way they practiced law together. That they chose to do it in the form they did, and because they preserved to the Debtor the rights they did, they are

---

[7] California partners were formed under the Moscone-Knox Professional Corporation Act (Cal. Corp. Code § 13400, et seq.). Corporate partners formed elsewhere would have been created under comparable but different provisions of their respective state's laws.

-7-

governed by California law and the principles of _Jewel_ and _Fox_.

As illustrated in the appendix, Debtor retained to itself several rights, including unbilled fees, work in process and rights and access to clientele. The final sentence of Paragraph 9.5 of the Employment Agreement confirms forcefully the nature of the relationship:

> Employee [a practicing attorney with Debtor] understands and agrees that, so long as Employee remains employed by the Company [the Professional corporate partner of Debtor], Employee's solicitation of clients to terminate their client relationship with the [Debtor] in whole or in part _involves fiduciary principles_ on the part of the Employee and requires prior consent of the Company.

(Emphasis added.)[8]

In sum, the court is satisfied that, just as the _Fox_ court extended _Jewel_ to the professional corporation, the same rules and consequences should follow and apply to Debtor's two-tier structure.

B. <u>The Basic Documents did not waive Debtor's rights under Jewel.</u>

Defendant seeks dismissal of the adversary proceeding because Debtor had no right to bring claims against the Shareholders or the corporate partners for unfinished business profits and thus the Jewel Waiver transferred no property of Debtor in the first instance. In other words, Debtor had no rights in unfinished business to waive. The court is not persuaded; the Basic Documents provided Debtor -- at least until the Jewel Waiver was executed -- with the right to claim profits from such unfinished business after the departure of Shareholder attorneys completing

---

[8] If the drafters of "involves fiduciary principles" meant to mean something less than the fiduciary relationships that the _Jewel_ and _Fox_ courts recognized, they failed.

-8-

such business. Debtor's Members were quite experienced, and plainly knew about <u>Jewel</u> and <u>Brobeck</u>[9] when they drafted the Plan of Dissolution and the Jewel Waiver.

As shown specifically in the attached appendix, no corporate partner or Shareholder had a right to Debtor's unbilled time or its work in process. Debtor did not waive (either explicitly or inferentially by those documents) such rights or the right to compel an accounting from departed Members, at least not until the execution of the Jewel Waiver, when Debtor was insolvent and bankruptcy was three months in the future.

The language of the Basic Documents, by reserving to Debtor the unbilled fees, the work in process and the access to the clientele, convinces the court that whatever vitality may have once existed by virtue of <u>Jacobson v. Wikholm</u>, 29 Cal. 2d 24 (1946), suggesting that the surviving partner who completes the work in progress keeps all of the profits, was abrogated by the parties' agreements.

When Debtor reconfigured itself under the Basic Documents or at some other time before bankruptcy loomed and it was insolvent, it could have surrendered those rights to its Partners or its Members, but it did not. Had it done so, whether wise law firm practice or not, the September 2008 Jewel Waiver would have been unnecessary and Debtor now would likely have no theory of fraudulent transfer to pursue.

C.   <u>The Jewel Waiver constitutes a transfer of Debtor's</u>

---

[9] See discussion in III(C), <u>infra</u>.

-9-

unfinished business.[10]

As noted above, the Jewel Waiver was part of Debtor's Plan of Dissolution. In the Jewel Waiver, Debtor, agreed to waive

. . . any rights and claims under the doctrine of [Jewel] to seek payment of legal fees generated after the departure date of any lawyer or group of lawyers with respect to non-contingency/non-success fee matters only. . . .

While the Jewel Waiver did not refer to "unfinished business," specifically, the court construes the Jewel Waiver to waive exactly that, namely Debtor's right to profits from a dissolved law firm's unfinished business as defined in Jewel and as reiterated by this court in Greenspan v. Orrick, Harrington & Sutcliffe (In re Brobeck Phleger & Harrison LLP) 408 B.R. 318 (Bankr. N.D. Cal. 2009) ("Brobeck").[11]

For the reasons stated in Brobeck, the court treats Debtor's unfinished business as Debtor's property that was transferred by the Jewel Waiver, and that may be recovered under the Complaint. Even those rights, however, are subject to the reasonable compensation for completing the work in progress that RUPA (unlike the former Uniform Partnership Act) recognizes, this court in Brobeck recognized, and the Debtor in the Complaint recognizes.[12]

---

[10] Debtor does not challenge the efficacy of the Jewel Waiver itself, but only the consequence as a fraudulent transfer.

[11] As in Brobeck, the court does not construe the Complaint to extend to new business handled by former members of Debtor at new law firms.

[12] To say that property that produced no profits was not property is circular, conflating what was transferred with its value. See Brobeck, 408 B.R. at 338.

-10-

D.  <u>Recovery by Debtor on the Complaint will not violate
California Rules of Professional Conduct or other
applicable law</u>.

One Defendant contended in its briefing that a recovery by Debtor in these actions would violate the fee-sharing prohibitions of the California Rules of Professional Conduct. The court believes that a transfer of unbilled fees could be recovered without doing violence to any applicable California Rule of Professional Conduct or similar law.

First, no "sharing" of fees would occur. Rather, the "profit" on the unfinished business would be recovered as a matter of state or federal fraudulent transfer law. Second, to the extent the Debtor is proceeding under the Bankruptcy Code, the doctrine of federal preemption would overrule any apparently contrary state law or rule. Finally, the court believes that there is no prohibition on recovering assets transferred in actual or constructive fraud of creditors. The client would have paid the fees and the fees will have been reduced to cash or equivalent.

Had Debtor made a transfer in fraud of creditors of an account receivable due from a client for legal services rendered, surely a recovery under the fraudulent transfer laws would not be an impermissible sharing of fees. There is no difference with unbilled fees.

A related argument is that a policy permitting the bankruptcy estates of dissolved law firms to recover unfinished business profits would render former lawyers of those firms "toxic"; no firms would hire them given the potential loss of those profits. The court is sympathetic to this policy concern, but the policy of

-11-

the fraudulent transfer laws – recovery for creditors what value is rightfully theirs - is far more compelling and is firmly established in both state and federal law.

In sum, no defendant has set forth persuasive authority to suggest a conflict sufficient to defeat the Debtor's theories of recovery.

E.    Debtor may seek to recover fraudulent transfers from Defendant.

Law firms that take on attorneys from an insolvent firm that executed a Jewel Waiver in its dying days may be named as fraudulent transfer defendants based on 11 U.S.C. § 550(b)(1). See Brobeck, 408 B.R. 339, fn. 31 ("Therefore, if the Trustee can recover profits from Brobeck's Unfinished Business, he can recover from not only the Partner Defendants but from the Firms as well, subject to any defenses available to the Firms in [§]550(b)(1)").

In Brobeck the plaintiff trustee named as defendants the individual former Brobeck partners who joined the firms he sued. Here Debtor has not done that. Nor does Debtor contend that the defendant was an initial transferee from Debtor by virtue of the Jewel Waiver. Instead, it contends in the alternative that the defendant is a subsequent transferee or that it may be an entity ". . . for whose benefit such transfer was made[.]" See 11 U.S.C. § 550(a)(1).

While Defendant seeks to dismiss or at least pin down Debtor on which of these alternate theories it relies, the court is satisfied that Debtor's alternate pleading here may survive the Motion. The development of the factual record will establish which theory prevails, and thus what defenses are available to

-12-

defandant.[13]

F. <u>The First Claim for Relief and the Third Claim for Relief lack specificity and should be amended</u>.

Defendant argues that Debtor's four fraudulent transfer claims lack the specificity and detail required by Fed. R. Civ. P. 9, incorporated by Fed. R. Bankr. P. 7009.[14]  It also argues that under the general rules of pleadings of Fed. R. Civ. P. 8, incorporated by Fed. R. Bankr. P. 7008, and recent Supreme Court precedents,[15] that Debtor's theories must have plausibility, not merely possibility, and should fail because the circumstances of the Jewel Waiver were completely explainable as part of Debtor's Plan of Dissolution.

The court disagrees with Defendant concerning Debtor's Second Claim for Relief and Fourth Claim for Relief (constructive fraudulent transfers).  Attacking a transfer as a constructively fraudulent transfer is not the same as alleging fraud.   A constructively fraudulent transfer has nothing to do with the conduct of the transferee.  Stated otherwise, the transfer itself is what is "fraudulent," because of its impact on the creditors of an insolvent transferor.  Accordingly, the court will not dismiss

_____

[13] One Defendant has argued that Debtor cannot demonstrate that the Jewel Waiver was given for less than a reasonably equivalent value.  This is a fact question not appropriate for resolution in the context of a Rule 7012 motion to dismiss. Further, the language of the Jewel Waiver is not clear as to what consideration, if any, was exchanged.

[14]  Fed. R. Civ. P. 9(b) provides that:

In alleging fraud or mistakes, a party must state with particularity the circumstances constituting fraud or mistake.

[15] <u>See Ashcroft v. Iqbal</u>, ____ U.S. ____ 129 S.Ct. 1937 (2009) and <u>Bell Atlantic Corp. v. Twombley</u>, 550 U.S. 544 (2007).

-13-

these claims for relief or even require that they be amended.

As to the First Claim for Relief and the Third Claim for Relief (actual fraudulent transfers), the fraudulent conduct that is necessary to state a claim on these theories requires actual conduct by the transferor, and no particular involvement by the transferee. That is not to say that in appropriate circumstances a transferee may not be a participant to an actual fraudulent transfer, but no such conduct is suggested in the Complaint.

The gravamen of these two counts is that somehow attorney members of Debtor, in connection with the execution of the Jewel Waiver, intended to hinder, delay or defraud Debtor's creditors. Not only are those serious allegations for Debtor to make, they lack specificity under each of the two rules cited above. Accordingly, the court will grant the Motion but will give Debtor thirty days from the date the order is issued on this Memorandum Decision to amend those claims for relief.

IV.  CONCLUSION

Concurrently with the entry of this Memorandum Decision the court is issuing an order denying the Motion as to the Second Claim For Relief and the Fourth Claim For Relief, and granting the Motion as to the First Claim For Relief and Third Claim For Relief, with Debtor given thirty days to amend either or both of those claims for relief.

Consistent with the court's practice on adversary proceedings related to Debtor, rather than set a continued status conference, the court will simply leave this matter off calendar, subject to being reset if and when any party wishes to be heard on any motions or until either or both parties desire to bring the matter

-14-

```
 1   before the court for trial setting and other pretrial matters.
 2                    * * * END OF MEMORANDUM DECISION * * *
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

-15-

| Document | Paragraph | Language | Court's Conclusions |
|---|---|---|---|
| PA | Background | "This Agreement provides for the continued practice of law by the Partners...' | Debtor is the law firm; and its professional corporations its partners. |
| | 2.2 <u>Business</u> | "The business of the Partnership is to engage in the profession of law..." | Same |
| | 3.2 <u>Draws</u> | "...the Compensation Committee shall determine a draw amount attributable to each Member." | "Member" [not a party to the Partnership Agreement] refers to Shareholder of Partner (See Glossary). Not unlike other traditional law firm compensation determinations. |
| | 3.3(a) <u>Percentages</u> | "the Compensation Committee shall determine a percentage amount...which is attributable to each Member..." | Same |
| | 3.4(b) <u>Profits and Losses</u> | "The Percentage Interest of a Partner for a Fiscal Year shall be the sum of the Attributed Percentages of its Members." | Same |

Heller Memorandum Decision on Motions to Dismiss
Appendix re Basic Documents      -16-

| Document | Paragraph | Language | Court's Conclusions |
|---|---|---|---|
| | 3.5(a) Interest in Partnership | "...no Partner and no Member shall have any interest in ...unbilled fees, work in progress, real or personal property..." | Debtor retained interests in unfinished business. |
| | 3.5(b) | Describes entitlements of withdrawing Partner or Member whose employment by a Partner is terminated. | Debtor retains unbilled fees, work in progress (i.e., unfinished business), real or personal property. |
| | 4.5 Clients | "All clients for whom any Partner or Member provides legal services shall be clients of the Partnership..." | Clients are the Debtor's. |
| | 8.1 Entire Agreement | Integration provision covers "terms and conditions agreed upon by the Partners relating to their subject matters..." | See comments re ¶¶ 3.5 (a) & (b). |
| | 8.4 Relinquishment | Each Partner waives "the right to demand an accounting of any Partnership business or ... the right to demand an interest in or access to...clientele..." | Debtor did not waive or relinquish anything. It retained right to demand accounting and the "clientele." |
| | 8.7 Governing Law; Consent to Jurisdiction | California law applies. | Jewel applies. |
| SHA | Background | Each Shareholder [Member] licensed to practice with the professional corporation. | |

Heller Memorandum Decision on Motions to Dismiss
Appendix re Basic Documents     -17-

| Document | Paragraph | Language | Court's Conclusions |
|---|---|---|---|
| | 2.2 <u>Common Stock</u> & 2.3 <u>Preferred Stock</u> | Formulas for determining number of shares of common stock in the professional corporation for each attorney Member/Shareholder based on, inter alia, determinations of Adjusted Attributed Percentages by the Compensation Committee. | Common stock calculations not unlike other traditional lawfirm compensation determinations. Preferred stock is a form of capital contribution. |
| | 3.4(b) <u>Mechanics and Payment</u> [on Termination of Employment] | Shareholder/Member who leaves other than through death, disability or retirement paid for Common and Preferred Stock. | Deferred payment scheme for departing Member under other circumstances. |
| | 3.9(a) <u>Alternative Medium of Payment; Set-Off</u> | Deals with payout of Member who provides legal services, directly or though a new firm affiliation, to a client of the Debtor. Debtor may make payout, in lieu of cash, through assignment of accounts receivable or unbilled fees owed by prior client. | Departing attorney taking client not paid out as well as those who died, retired or were disabled. |
| | 3.9(b)& (e) | Debtor may recover excess cash paid on stock repurchase. Debtor may also set-off any amount owing to it or professional corporation against amounts owing to departed Member. | Set-off available, but not described as the sole remedy of recovery from Member. |

Heller Memorandum Decision on Motions to Dismiss
Appendix re Basic Documents      -18-

| Document | Paragraph | Language | Court's Conclusions |
|---|---|---|---|
| | 5.1 Entire Agreement | Integration provision covers "terms and conditions agreed upon by the Shareholder, the Company, the other Partners and the Partnership relating to their subject matters..." | No waiver of Debtor's or Company's rights to unfinished business. |
| | 5.4 No Entitlements | "No Shareholder shall have any interest, other than as a shareholder, in... unbilled fees, work in progress, real or personal property...." "Each Shareholder relinquishes and waives...the right to demand an accounting of any Partnership business...or the right to demand an interest in or access to...clientele..." | No waiver of right to accounting by Debtor or Company. Debtor retains right to unfinished business. |
| | 5.7 Governing Law; Consent to Jurisdiction | California law applies. | Jewel applies. |
| EA | Background | Debtor and employee [attorney] engaged in the practice of law. | Consistent with recitals in other agreements. |
| | 3.1 Full Time Employment | Employee to devote substantially all time to practice of law. | Same |

Heller Memorandum Decision on Motions to Dismiss
Appendix re Basic Documents       -19-

| Document | Paragraph | Language | Court's Conclusions |
|---|---|---|---|
| | 4 <u>Compensation</u> | Base salary and annual bonus provisions | Consistent with recitals and authorizations for fixing compensation in other agreements. |
| | 9.4 <u>Compensation upon Termination</u> | Provisions deal with entitlement to unpaid Base Salary and Annual and other bonuses, subject to payback of any excess. | Same |
| | 9.5 <u>Post-Termination Obligations</u> | "...Employee shall not be entitled to any share of future income from client work existing at the effective date of termination....." "Employee understands and agrees that, so long as Employee remains employed by the Company, Employee's solicitation of clients to terminate their client relationship with the [Debtor] in whole or in part involves fiduciary principles on the part of the Employee and requires prior consent of the Company. | Debtor retains right to unfinished business. Recognition of fiduciary relationships. |

Heller Memorandum Decision on Motions to Dismiss
Appendix re Basic Documents      -20-

| Document | Paragraph | Language | Court's Conclusions |
|---|---|---|---|
| | 10.1 <u>Entire Agreement</u> | Integration provision covers "terms and conditions agreed upon by Employee, the Company, the other Partners and the Partnership relating to their subject matters..." | Nothing about different rights upon dissolution. |
| | 10.4 <u>No Entitlement</u> | "Employee... relinquishes and waives...the right to demand an accounting of any Partnership business...or the right to demand an interest in or access to...clientele..." | No waiver of right to accounting by Debtor or Company. |
| | 10.7 <u>Governing Law; Consent to Jurisdiction</u> | California law applies. | <u>Jewel</u> applies. |
| | | | |

Heller Memorandum Decision on Motions to Dismiss
Appendix re Basic Documents        -21-