

**Signed and Filed: September 28, 2011**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>HELLER EHRMAN LLP,<br><br>        Liquidating Debtor. | Bankruptcy Case<br>No. 08-32514DM<br><br>Chapter 11 |
| HELLER EHRMAN LLP, Liquidating Debtor,<br><br>        Plaintiff,<br><br>v.<br><br>ARNOLD & PORTER, LLP,<br><br>        Defendant. | Adversary Proceeding<br>No. 10-3203DM<br>(Consolidated with<br>Nos. 10-3210; 10-3213;<br>10-3216; 10-3219; 10-3221;<br>10-3234; 10-3235; 10-3238;<br>10-3239; 10-3243; 10-3248;<br>10-3251; 10-3253; 10-3254;<br>and 10-3263)[1] |

**RECOMMENDATION OF BANKRUPTCY JUDGE
REGARDING MOTIONS TO WITHDRAW THE REFERENCE**

TO: THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

I.    INTRODUCTION

    Sixteen law firm defendants have asked the district court

---

[1] Defendants in these adversary proceedings are, respectively, Arnold & Porter, LLP; Davis Wright Tremaine LLP; Foley & Lardner LLP; Goodwin Procter, LLP; Hogan Lovells; Jones Day; Orrick, Herrington & Sutcliffe LLP; Patton Boggs LLP; Pillsbury Winthrop Shaw Pittman LLP; Proskauer Rose, LLP; Sheppard Mullin Richter & Hampton LLP; Summit Law Group PLLC; Wilmer Cutler Pickering Hale and Dorr LLP; Winston & Strawn LLP; Cooley Godward LLP; and Hafetz Nechles & Rocco.

withdraw from me the cases pending against them.  I recommend that
their requests be rejected and the matters left with me.[2]  If
defendants have a right to a jury in the district court, the
Bankruptcy Local Rules have a simple procedure in place that is
entirely consistent with controlling Ninth Circuit authority.  If
the cases ultimately are to be tried to the court, the Supreme
Court's recent decision that has sparked this flurry of activity
here and throughout the country has implicitly approved procedures
that may be followed here.

If the matters are core and do not present a constitutional
challenge to my authority, normal appellate rules work fine.  If
the core matters are constitutionally suspect - a question
certainly not resolved by the Supreme Court - the handling of them
as non-core has been endorsed by the Supreme Count, and is easily
dealt with under established rules.

I have the background and experience in the newly developing
area of substantive law involved and significant familiarity with
the debtor law firm and similar actions involving this plaintiff
and the trustee of another law firm.  I should keep the cases
through pretrial and dispositive motions, and try those where no
jury right is invoked.  Withdrawal of the reference at this time
would amount to an unnecessary extension of the narrow holding in
Stern, would be an inefficient use of judicial resources by

---

[2] "A Bankruptcy Judge may, on the Judge's own motion, upon the filing of a motion [to withdraw the reference] under subparagraph (a) of this rule, recommend to the District Court whether the case or proceeding should be withdrawn under 28 U.S.C. § 157(d).  Such a recommendation shall be served on the parties to the case or proceeding and forwarded to the Clerk of the District Court."  B.L.R. 5011-2(b).

overburdening the district court and foregoing the services of a bankruptcy court ready, willing and able to do its job and would distort the traditional way to challenge and decide the constitutionality of a federal statute.

## II. PROCEDURAL BACKGROUND

Plaintiff Heller Ehrman LLP ("Heller") sued several defendants in separate but similar adversary proceedings to recover fraudulent transfers[3]. Defendants here have filed motions to withdraw the reference of these proceedings from the bankruptcy court to the district court (the "Motions").[4] Defendants contend that under <u>Stern v. Marshall</u>, 131 S.Ct. 2594 (2011), bankruptcy judges do not have the authority to hear and determine fraudulent transfer actions that are specifically authorized by the Bankruptcy Code.

I held a status conference on September 12, 2011, that was attended by counsel for all defendants (twelve of whom had filed their Motions and three of whom did so later that week) except Summit Law Group, PLLC. Summit filed its Motion on September 19, 2011. I suggested, and counsel at the status conference agreed, that the Motions be consolidated for administration so that they

---

[3] The terms "fraudulent transfers" and "fraudulent conveyances" as quoted in the statute below are used interchangeably.

[4] The district court may withdraw the reference "for cause shown" and must withdraw if resolution of the proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). If cause other than <u>Stern</u> has been alleged, or interstate commerce has been implicated (both unlikely), I make no recommendation.

Case: 10-03203   Doc# 49   Filed: 09/28/11   Entered: 09/28/11 10:45:37   Page 3 of 19

could be presented to one district judge in one proceeding. Accordingly, by separate order issued concurrently with this Recommendation, all sixteen Motions are being consolidated, with this adversary proceeding designated as the lead case.[5] If Summit Law Group objects to this procedure it should do so promptly, in which case the court will amend the consolidation order and transmit Summit's motion separately.

When counsel for Heller stated that he would oppose the Motions, I informed all counsel that I would, sua sponte, make my recommendation that the Motions be denied as permitted by our local rules. Counsel for Heller has the task of advocating for his client and no doubt will do so when he opposes the Motions when it is time.[6] That is not my role. Rather, I make this recommendation to give the assigned district judge my best judgment about what I think <u>Stern</u> requires and does not require and why the adversary proceedings should stay with me for now.

---

[5] On September 21, 2011, while I was preparing this Recommendation, counsel for plaintiff advised my staff that preliminary settlements had been reached with five defendants, and there was a possibility that two more defendants will settle. Those defendants were not identified. Even when those settlements are effective, several Motions will remain.

[6] B.L.R. 5011-2(d) provides:

**(d) Scheduling and Briefing.**

Unless the assigned District Judge orders otherwise: within 14 days after receiving notice of the assignment to a District Judge under subsection (c) of this rule, any party objecting to withdrawal of the reference shall file in the District Court its opposition brief of not more than ten pages; 14 days thereafter, any party supporting withdrawal of the reference may file a reply brief of not more than ten pages; no hearing will be held unless the assigned District Judge orders otherwise.

-4-

III. DISCUSSION

   *A. Summary of Underlying Actions*

Heller, the Reorganized Debtor under a confirmed chapter 11 plan, is seeking to recover from the defendant law firms the value of profits received by them with respect to unfinished business that was being handled by Heller at the time of its dissolution and taken to those firms by former Heller partners.

As part of its dissolution process, Heller agreed to waive its rights under Jewel v. Boxer, 156 Cal. App. 3d 171 (1984), to recover fees associated with such unfinished business and generated by its attorneys after their departure. Heller now seeks to avoid what is generally known as the Jewel Waiver as constituting actual or constructive fraudulent transfers pursuant to 11 U.S.C. §§ 548 and 550, as well as under California Civil Code §§ 3439.04, 3439.05, 3439.07 via 11 U.S.C. § 544.

Similar adversary proceedings have been filed in the Heller case and the Brobeck bankruptcy and resolved by settlement. None has gone to trial.[7]

   *B. Law Governing My Authority to Enter Final Judgments*

The district courts have original and exclusive jurisdiction over all bankruptcy cases. 28 U.S.C. § 1334(a). The district courts also have original but not exclusive jurisdiction over all proceedings arising under title 11, or arising in or related to

---

[7] For a more thorough description of the underlying facts, theories of recovery and examination of the fraudulent transfer law in this context, see my prior decisions in Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Ehrman LLP), 2011 WL 1539796 (Bankr. N.D. Cal. April 22, 2011) (denying the defendants' motions to dismiss) and Greenspan v. Orrick, Harrington & Sutcliffe (In re Brobeck Phleger & Harrison LLP), 408 B.R. 318 (Bankr. N.D. Cal. 2009).

-5-

cases under title 11. 28 U.S.C. § 1334(b).

After the Supreme Court held in <u>Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982), that bankruptcy courts could not hear and decide a state law breach of contract claim, Congress enacted procedures for determining when and to what extent a bankruptcy court can resolve matters described in 28 U.S.C. § 1334 (a) and (b). See 28 U.S.C. § 157 ("Section 157").[8] A district court may refer such matters to the bankruptcy court. 28 U.S.C. § 157(a). Our district court has done so in B.L.R. 5011-1.[9]

Section 157(b)(1) of title 28 permits a bankruptcy court to "hear and determine" all cases and all "core proceedings arising under title 11, or arising in a case under title 11." A bankruptcy court can enter orders and judgments in such matters, subject to appellate review under 28 U.S.C. § 158. Subsection (b)(2) lists examples of "core proceedings," including "proceedings to determine, avoid, or recover fraudulent conveyances" such as in these adversary proceedings before me. 28 U.S.C. § 157(b)(2)(H). "A determination that a proceeding is not

---

[8] Section 157 is <u>not</u> a jurisdictional provision. Rather, it provides a mechanism for ascertaining whether a bankruptcy court can enter final orders and judgments. <u>Stern</u>, 131 S.Ct. at 2607 ("Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. [] That allocation does not implicate questions of subject matter jurisdiction.") See also <u>Heller v. Gregory Canyon, Ltd.</u>, 2011 WL 3878347 at *3 n.4 (Bankr. N.D. Cal. Aug. 30, 2011).

[9] "Pursuant to 28 U.S.C. § 157(a), all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the Bankruptcy Judges of this District, except as provided in B.L.R. 5011-1(b) [regarding actions that were pending in district court on the date of the filing of the bankruptcy petition]." B.L.R. 5011-1(a).

-6-

Case: 10-03203   Doc# 49   Filed: 09/28/11   Entered: 09/28/11 10:45:37   Page 6 of 19

a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

Section 157(b)(3) imposes on me the obligation to determine whether a matter is core or not.[10] For the most part the moving defendants have conceded that the actions against them are core proceedings, but I have not made a final determination. They no doubt will argue, as was done in <u>Stern</u>, that even though fraudulent transfer actions are core under the statute, bankruptcy judges cannot enter final judgments. Stated otherwise, they might denominate these proceedings as "unconstitutional core" proceedings because of the delegation of authority to bankruptcy judges. If I determine that these are core proceedings, I can issue a final judgment. The statute says so and <u>Stern</u> does not hold to the contrary. If timely objections to my doing so are raised before me and preserved on appeal, the district court can decide the issue on appeal.

Section 157(c)(1) permits a bankruptcy judge to hear non-core proceedings that are otherwise related to the bankruptcy case. 28 U.S.C. § 157(c)(1). In such non-core, related-to proceedings, a bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy court's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and

---

[10]Section 157(b)(3) of Title 28 states that "<u>the bankruptcy judge shall determine</u>, on the judge's own motion or on timely motion of a party," whether a proceeding is a "core" one in which it can enter final judgments. 28 U.S.C. § 157(b)(3) (emphasis added).

-7-

specifically objected."[11]  Id.  That is exactly what the bankruptcy court did not do in Stern (discussed below), and exactly why the judgment it entered was not final. It is clear from Stern, however, that the bankruptcy court there should have treated the matter before it as non-core and adhered to the proposed findings procedure in Section 157(c)(1) and Fed. R. Bankr. P. 9033.  In fact, the district court in Stern treated the bankruptcy judge's findings as proposed and modified them.  The Supreme Court found no fault with that procedure but simply ruled that the district court judgment was too late: a Texas probate judgment was entered between the time of the bankruptcy court's ruling and the district court's judgment and was thus entitled to preclusive effect.

If I keep these matters and the district court on appeal

---

[11]Federal Rule of Bankruptcy Procedure 9033 governs the procedures for a district court's de novo review of the proposed findings of fact and conclusions of law of a bankruptcy court in a non-core proceeding.  A party must file and serve written objections within 14 days of service of the findings and must identify the specific finding or conclusions to which they object as well as the grounds for such objection.  The objecting party must arrange for a prompt transcription of the record for the review.  Fed. R. Bankr. P. 9033(a).

"The district court shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions."  Fed. R. Bankr. P. 9033(d).

De novo review therefore does not necessarily require a new trial; rather, the district court has broad discretion in the manner in which it conducts its de novo review.  The notion that the district judge will have to reinvent the wheel and start all over is simply not so.  De novo review might be nothing more than reviewing the findings and agreeing with them.  And review of conclusions of law de novo is exactly the same as the rule of appellate practice.

-8-

disagrees with my determination that a matter is core, or perhaps is "unconstitutionally core," it can simply treat my findings of fact as "proposed findings" and review them de novo. I can simplify the process by committing that any findings of fact I make at trial should be treated as proposed if the district court concludes that I lacked authority actually to enter those findings.

I also note that in non-core proceedings I can resolve pre-trial matters, including case-dispositive motions that do not require factual findings, notwithstanding the absence of consent from all parties. In re Healthcentral.com, 504 F.3d 775, 787 (9th Cir. 2007). In other words, if a proceeding could be disposed of on uncontested facts, summary judgment would be appropriate. The legal rules are always subject to de novo review. There is absolutely no reason why I would not follow the same procedure if these matters are found "unconstitutionally core" (viz., non-core) matters.

C. *Stern v. Marshall*

1. <u>The Holding - and What It Did Not Hold.</u>

Stern is the first Supreme Court decision to address the constitutionality of any portion of Section 157(b) since its enactment. The Court held that a bankruptcy court cannot enter final findings of fact with respect to a debtor's state law counterclaim against a creditor who had filed a proof of claim against the bankruptcy estate. The court concluded that while Section 157(b)(2) -- which identifies "counterclaims by the estate against persons filing claims against the estate" as core -- conferred statutory authority for the court to hear and determine

-9-

the counterclaim, that portion of the statute was an unconstitutional allocation of judicial power from Article III judges to Article I bankruptcy judges:

> Article III, § 1, of the Constitution commands that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." That Article further provides that the judges of those courts shall hold their offices during good behavior, without diminution of salary. Ibid. Those requirements of Article III were not honored here. The Bankruptcy Court in this case exercised the judicial power of the United States by entering final judgment on a common law tort claim, even though the judges of such courts enjoy neither tenure during good behavior nor salary protection. We conclude that, although the Bankruptcy Court had the statutory authority to enter judgment on [the debtor's] counterclaim, it lacked the constitutional authority to do so.

Stern, 131 S.Ct. at 2600-01.

Defendants contend that Stern is a game-changer: that I cannot enter a final judgment in the underlying fraudulent conveyance actions, notwithstanding the provisions of Section 157(b). While dicta in Stern may indicate that fraudulent transfer actions cannot be finally heard and determined by an Article I judge,[12] the holding is much narrower.

---

[12] The Supreme Court stated that it had concluded in Granfinanciera v. Nordberg, 492 U.S. 33 (1989), that "Congress could not constitutionally assign resolution of [a] fraudulent conveyance action to a non-Article III court." Stern, 131 S.Ct. at 2614, n.7. "Because neither party asks us to reconsider the public rights framework for bankruptcy, we follow the same approach here." Id. In the text accompanying footnote 7, the Court further stated:

> The most recent case in which we considered application of the public rights exception — and the only case in which we have considered that doctrine in the bankruptcy context since Northern Pipeline — is [Granfinanciera]. In Granfinanciera we rejected a bankruptcy trustee's argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a

-10-

The comments in Stern about Granfinanciera do support an argument that the statutory designation of fraudulent transfer actions as core may be unconstitutional; however, one could also extrapolate from statements made in the decision that such a delegation is not appropriate when section 544(b) and section 548 claims are asserted. Id. at 2618 (a matter may be core if "the action at issue stems from the bankruptcy itself"). The bottom line, though, is that the Supreme Court did not hold in Stern that bankruptcy judges lack authority to render final judgments on fraudulent transfer claims. In fact, it emphasized -- repeatedly -- that its holding was narrow and limited to Section 157(b)(2)(C) (counterclaims). Given these express limitations of the holding, I believe I am still bound by the Ninth Circuit's holding in In re Mankin, 823 F.2d 1296 (9th Cir. 1987), that fraudulent transfer actions are core whether arising directly under section 548 of the Bankruptcy Code or from state law (but made available to a

---

bankruptcy proceeding fell within the "public rights" exception. We explained that, "[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court." Id., at 54–55, 109 S.Ct. 2782. We reasoned that fraudulent conveyance suits were "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." Id., at 56, 109 S.Ct. 2782. As a consequence, we concluded that fraudulent conveyance actions were "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." Id., at 55, 109 S.Ct. 2782.

Stern, 131 S.Ct. at 2614.

-11-

bankruptcy estate under section 544(b)) and that Section 157(b)(2)(H) (fraudulent transfers) does not violate Article III of the Constitution by authorizing bankruptcy judges to decide them.[13]

2. The Applicability of Stern To These Proceedings

In concluding that a defendant is entitled to Article III adjudication of a counterclaim that does not arise under bankruptcy law and that does necessarily have to be determined in allowing or disallowing the initial claim, the Supreme Court explicitly limited the scope of its holding: "We conclude today that Congress, in one isolated respect, exceeded that [Article III] limitation . . . ."[14] Id. at 2620. This narrow holding "does

---

[13] I recognize that the Ninth Circuit's holding in Mankin was based on its conclusion that a trustee's ability to avoid a fraudulent transfer is a public right, a conclusion that is contrary to the Supreme Court's holding in Granfinanciera. Nonetheless, neither Granfinanciera (which involved a defendant's right to a jury trial in a fraudulent conveyance action) nor Stern overrule Mankin's holding: that section 157(b)(2)(H) is constitutional.

[14] In a thorough and thoughtful analysis of the Stern decision, the court in In re Salander O'Reilly Galleries, 453 B.R. 106, 115-116 (Bankr. S.D.N.Y. 2011) pointed out the many instances in which the Supreme Court indicated that its holding was narrow, stating:

> Stern is replete with language emphasizing that the ruling should be limited to the unique circumstances of that case, and the ruling does not remove from the bankruptcy court its jurisdiction over matters directly related to the estate that can be finally decided in connection with restructuring debtor and creditor relations.

Among the examples cited by the Salander O'Reilly court are the following:

> [T]he debtors' claims in the cases on which [Vickie Marshall] relies were themselves federal claims under bankruptcy law, which would be completely resolved in the bankruptcy process of allowing or disallowing

-12-

not impact a bankruptcy court's ability to enter a final judgment in any other type of core proceeding authorized under 28 U.S.C. § 157(b)(2)." In re Peacock, 2011 WL 3874461 (Bankr. M.D. Fla. Sept. 2, 2011); see also In re Safety Harbor Resort and Spa, 2011 WL 3849639 (Bankr. M.D. Fla. 2011) (concluding that actions to recover preferential transfers remain core).

As observed by the Safety Harbor court and the bankruptcy court in In re Washington Mut., Inc., 2011 WL 4090757 (Bankr. D. Del. 2011), the majority in Stern acknowledged that a determination of whether a matter is core requires a consideration of "whether the action at issue stems from the bankruptcy itself" (Stern, 131 S.Ct. at 2618). Here, as noted, the fraudulent transfer actions are authorized by sections 544(b) and 548 of the Bankruptcy Code.

Moreover, but for the bankruptcy, Heller could not assert these claims at all. As the transferor, it would lack standing had it not acquired the rights and duties of a trustee as a debtor-in-possession (and now as the liquidating debtor). The

---

claims. <u>Here Vickie's claim is a state law action independent of the federal bankruptcy law</u> and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy.

Stern, 131 S.Ct. at 2610 (emphasis added); id. at 2618 ("Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; <u>the question is whether the action at issue stems from the bankruptcy itself</u> or would necessarily be resolved in the claims allowance process ") (emphasis added); id. at 2619 ("We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; <u>we agree with the United States that the question presented here is a 'narrow' one</u>"); id. at 2620 ("We conclude today that Congress, <u>in one isolated respect</u>, exceeded [the limitations of Article III] in the Bankruptcy Act of 1984").

-13-

Ninth Circuit in Mankin drew another important distinction between fraudulent transfer actions and state law claims like those at issue in Northern Pipeline and Stern: those claims cannot exist but for the debtor's insolvency, its inability to pay debts as they become due, or its unreasonably small capital -- conditions which generally result in a bankruptcy.

> The contract suit in Northern Pipeline could have been brought whether or not the plaintiff was bankrupt. A fraudulent conveyance, though, can only exist if the conveyor is insolvent or about to become insolvent, and thus is inextricably tied to the bankruptcy scheme. See In re Kaiser, 722 F.2d 1574, 1582 (2d Cir. 1983). If a conveyor enjoys good financial health, a conveyance cannot harm its creditors, who would thus have no cause of action to recover transfer.

Mankin, 823 F.2d at 1307 n.4.

As I acknowledged earlier, the Supreme Court has previously concluded that fraudulent conveyance actions do not involve "public rights." Granfinanciera, 492 U.S. 33 (1989). In Stern, the Supreme Court reached its "narrow" holding -- purportedly unlikely to have significant "practical consequences" or "change all that much" -- by reasoning that the debtor's claim did not involve a "public right" and thus could not be delegated to a non-Article III court for final determination. If that reasoning had been the holding, I would agree that core fraudulent transfer actions might exceed my authority. But the holding was expressly limited, and given that Heller's claims do arise from bankruptcy law (11 U.S.C. §§ 544(b) & 548) and would not exist but for the bankruptcy (unlike the counterclaims in Stern), I believe that Stern may not limit my power to enter a final judgment on those

-14-

claims. See Safety Harbor, 2011 WL 3849639 at *1;[15] In re

Innovative Comm. Corp., 2011 WL 3439291 (Bankr. D. V.I. Aug. 5,

---

[15]The Safety Harbor ably explained why the Stern's reliance on Granfinanciera does not mean that fraudulent transfers are no longer core:

> Nor does the Stern Court's reliance on Granfinanciera actually limit a bankruptcy court's jurisdiction to finally resolve the other core proceedings identified in section 157(b)(2). Understandably, some bankruptcy courts have expressed concerns about the litigation that may result due to uncertainties created by Stern with respect to other types of proceedings defined as core under section 157(b)(2) that were not at issue in Stern. To be sure, the Stern Court did explain that Granfinanciera's "distinction between actions that seek 'to augment the bankruptcy estate' and those that seek 'a pro rata share of the bankruptcy res' reaffirms that Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case." And the Stern Court did emphasize that the "question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." It is understandable that some would view that language as a new limit on the Court's constitutional authority to finally resolve other "core" proceedings, such as fraudulent conveyance or preference actions.
>
> But the Stern Court's use of the word "reaffirm" makes clear that nothing has changed. The sole issue in Granfinanciera was whether the Seventh Amendment conferred on petitioners a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against them. Granfinanciera did not hold that bankruptcy courts lack jurisdiction to enter final judgments on fraudulent conveyance claims. In fact, the Supreme Court went to great lengths to emphasize that issue was not even before it in that case. As explained in Granfinanciera, "however helpful it might be for us to adjudge every pertinent statutory issue presented by the 1978 Act and the 1984 Amendments, we cannot properly reach out and decide matters not before us. The only question we have been called upon to answer in this case is whether the Seventh Amendment grants petitioners a right to a jury trial."

Safety Harbor, 2011 WL 3849639 at *10-11.

-15-

2011) (holding that bankruptcy court could enter final judgment on a section 548 claim, notwithstanding the dicta in Stern, but entering proposed findings with respect to the state law fraudulent transfer claims brought by the trustee under section 544).

After Stern, some courts have concluded that they cannot hear fraudulent conveyance claims as core proceedings. They are focusing on the dicta of Stern, not its holding. I believe that this approach thrusts unnecessary burdens on already overworked district courts, especially when bankruptcy courts have a particular expertise in and familiarity with avoidance actions.

If there is a constitutional challenge, as stated previously, I can deal with it as any trial court should, with the tried and true appellate procedures in place and the "proposed findings" alternative for my findings of fact where necessary. The record should be fully developed and the determination of unconstitutionality reserved as a last resort rather than made so near the outset of the cases in what may truly be a needless advisory opinion. These adversary proceedings may be resolved by summary judgment (no facts to find; conclusions of law reviewed de novo) and even with findings (or proposed findings) favorable to defendants.

4. <u>Authority to Deal with Core Matters.</u>

I disagree with at least one court's post-Stern holding that it not only was unable to hear and determine fraudulent transfer claims designated as core in Section 157(b)(2)(H), but that it could not enter proposed findings as it could if the claims were non-core. In re Blixseth, 2011 WL 3274042 (Bankr. D. Mont. Aug.

-16-

1, 2011).

The Blixseth court reasoned that the absence of provisions in title 28 permitting a bankruptcy court to enter proposed findings in matters designated prevented it from making such findings. Assuming - as I do not - that fraudulent transfer actions can no longer constitutionally be tried by a non-Article III judges, title 28 does not prohibit the use of the proposed findings procedure. The absence of a provision is not a prohibition. Further, Stern approved exactly such a procedure. Similarly, the fact that Bankruptcy Rule 9033 only mentions non-core proceedings in no way prohibits following the same procedure in core matters. In re Emerald Casino, Inc., 2011 WL 3799643 at *1 and n.1 (Bankr. N.D. Ill. Aug. 26, 2011) (disagreeing with Blixseth and noting that if a matter is no longer covered by the statutory definition of core, they can still be non-core and fall fully within the definition of "related to" proceedings.).

In summary, if the fraudulent transfer claims are ultimately determined to fall outside the scope of my authority they would still be related to the bankruptcy case. I could enter proposed findings and, as stated above, I could determine dispositive motions that do not require factual findings. Healthcentral.com, 504 F.3d at 787. Finally, where a right to a jury exists and the parties do not consent to my presiding, our Bankruptcy Local Rules provide a simple procedure that once again spares the district judge from dealing with these specialized cases until it is time

to call the jury.[16]

IV. CONCLUSION

For the foregoing reasons, I believe that Stern is inapplicable and that these matters are core proceedings in which I can enter a final judgment. Even if it were not, I could handle all pre-trial matters and motions exactly as I have done in other non-core cases. Any findings of fact could be treated as "proposed" as appropriate. I therefore recommend that the district court deny to motions to withdraw the reference of these

---

[16] B.L.R. 9015-2 provides, in part:

**9015-2. Jury Trials and Personal Injury and Wrongful Death Claims.**

    **(a) Determination of Right.**

In any proceeding in which a demand for jury trial is made, the Bankruptcy Judge shall, upon the motion of one of the parties, or upon the Bankruptcy Judge's own motion, determine whether the demand was timely made and whether the demanding party has a right to a jury trial. The Bankruptcy Judge may, on the Judge's own motion, determine that there is no right to a jury trial in a proceeding even if all of the parties have consented to a jury trial.

    **(b) Motion and Certification to District Court.**

If the Bankruptcy Judge determines that the demand for a jury trial was timely made and the party has a right to a jury trial, and if all parties have not filed written consent to a jury trial before the Bankruptcy Judge, the Bankruptcy Judge shall, after having resolved all pre-trial matters, including dispositive motions, certify to the District Court that the proceeding is to be tried by a jury and that the parties have not consented to a jury trial in the Bankruptcy Court, and shall include in such certification, a report of the status of the proceeding and a recommendation on when the matter would be suitable for withdrawal from the Bankruptcy Court. Upon such certification, the party who has demanded a jury trial shall promptly file a motion in accordance with B.L.R. 5011-2(a) for withdrawal of the reference of the proceeding to be tried to a jury. The motion and the certification shall thereafter be handled in the District Court in accordance with B.L.R. 5011-2(c), (d) and (e).

-18-

1 adversary proceedings.
2
3                                        Respectfully submitted
4
5                                        /s/ Dennis Montali
                                         United States Bankruptcy Judge
6
7
8                    *** END OF RECOMMENDATION ***